UNITED STATES of America,
Appellant,

v.

Lester Mitchell LAWSON, and One 1957 Model Chevrolet Bel Air Sedan, Motor Number VC57N163689, Appellee.

No. 13728.

United States Court of Appeals
Sixth Circuit.

May 11, 1959.

C. C. Ridenour, Asst. U. S. Atty., Chattanooga, Tenn., for appellant, John C. Crawford, Jr., and John F. Dugger, Chattanooga, Tenn., on the brief.

Joe S. Bean, Winchester, Tenn., for appellee.

Before MARIS and MILLER, Circuit Judges, and MATHES, District Judge.

MARIS, Circuit Judge.

This is an appeal by the Government from an order of the District Court for the Eastern District of Tennessee dismissing a libel seeking the forfeiture of a Chevrolet Sedan automobile which had been seized by agents of the Alcohol and Tobacco Tax Division of the Internal Revenue Service. The libel alleged that the vehicle had been used in Grundy County, Tennessee, on August 4, 1957, in the conduct by Lester Mitchell Lawson of the business of wholesale liquor dealer which he was then and there carrying on without having paid the special tax imposed by section 5111 of the Internal Revenue Act of 1954, 26 U.S.C.A. § 5111, and it sought the condemnation of the vehicle as forfeited to the United States. Lawson filed an answer denying the allegations of illegal use of the vehicle and asking for its release and return to him as its owner. After hearing, the district court entered the order dismissing the libel which is here under review.

At the hearing the only evidence offered was that of Robert D. Field, an investigator in the Alcohol and Tobacco Tax Division of the Internal Revenue Service. This testimony may be summarized as follows:

On August 4, 1957, Field drove in a Government-owned automobile to the residence of Lawson near Monteagle, Tennessee, and told Lawson that he wanted to purchase 75 gallons of moonshine whiskey. Lawson told Field that he did not have that much but that he would take him over to his brother's place at Tracy City. Field had with him an informer named Yeller and Lawson suggested that Yeller ride with him to Tracy City in the Chevrolet automobile which is the subject of this proceeding and that Field follow him in his car. This they did. When they arrived at Tracy City Lawson had a conference with his brother after which he told Field that they would have to leave for about an hour while his brother got the whiskey and said: "We will just ride around in my car, and in that way we won't create any suspicion by being parked here." Thereupon Field left the Government car and he, Lawson and Yeller rode around in the Chevrolet for about an hour. When they got back the whiskey was there and they unloaded it from the brother's truck into the Government car. The whiskey bore no revenue stamps. Field then paid Lawson for it and, since they had seen the sheriff while they were driving around Tracy City, Field asked Lawson how he could get out of there and back onto the road to Nashville without going by the sheriff. Lawson then got into the Chevrolet car and told Field to follow him which he did through back streets which he did not know until he reached the main highway. The Chevrolet car was later seized by the Government agents as a result of this transaction.

Upon this evidence the district court held that the Chevrolet automobile was not being used by Lawson in the violation of law and that it was not subject to forfeiture. In reaching this conclusion the district judge appears to have directed his attention solely to the testimony with respect to the use by Lawson of the Chevrolet car to pilot Field out of Tracy City and on to the main highway after the whiskey had been purchased and loaded into the Government

car. Since the transportation of Government-owned whiskey by the Government agent, Field, did not involve a violation of the law the district judge concluded that the piloting by Lawson of the Government car containing the Government-owed whiskey likewise could not involve a law violation and he, accordingly, directed the dismissal of the libel.

The Government urges that in reaching this conclusion the district judge failed to take into consideration the evidence as to the use by Lawson of the Chevrolet car to take one and to pilot the other of his prospective customers from his own home to the source of supply of the whiskey which he proposed to sell them and to keep them out of sight while the whiskey was being procured for them. The Government argues, moreover, that the use of the Chevrolet car by Lawson in piloting his customers out of town after the whiskey was delivered to them was also a use of the vehicle in his business of wholesale liquor dealer even though the car was not being used to pilot a car containing liquor which was contraband at the time.

■ We think that these contentions of the Government are correct. It may well be, as the district court concluded, that the use of the Chevrolet to pilot Field out of Tracy City with the whiskey, which was then Government-owned, did not come within those cases in which a vehicle has been condemned for piloting or convoying another vehicle which was transporting nontax-paid liquor. But the charge here is not that the vehicle was being used in the unlawful distillation or transportation of nontax-paid liquor. Rather it is that the vehicle was being used in violating section 5691 of the Internal Revenue Code of 1954, 26 U.S.C.A. § 5691, which makes it a criminal offense for anyone to carry on the business of a wholesale dealer in liquors who willfully fails to pay the special tax imposed by section 5111(a). The question, therefore, is whether the evidence disclosed the use of the Chevrolet car by Lawson in the conduct of his wholesale liquor business.

■■ We think that a prima facie case of such use was made out by the Government. Certainly an automobile is being used by a wholesale dealer in merchandise as an instrumentality of his business when it is used to convoy or guide prospective customers from his own home or place of business to the place where the merchandise they seek to purchase is located and where it can be delivered to them. United States v. One 1950 Chevrolet 4-Door Sedan, 10 Cir., 1954, 215 F.2d 482. And it would certainly be in furtherance of the business of a wholesale dealer in a proscribed commodity, such as nontax-paid liquor, to use an automobile to keep his prospective customers away from the point where the merchandise is being assembled, if necessary to avoid suspicion, and to convoy them safely past the law enforcement authorities after they have made their purchase and have received delivery of the commodity. The evidence indicates that the seized Chevrolet car was used by Lawson for just these purposes. The case is clearly distinguishable from United States v. Lane Motor Co., 1953, 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, in which the seized automobile was used merely as a personal convenience by a worker at an illegal still to commute between his home and the still where he worked.

■ Up to this point we have assumed that Lawson was a wholesale liquor dealer who had willfully failed to pay the special tax of $200 imposed by section 5111(a) of the Internal Revenue Code. The district court, however, made no finding on this point and there was no direct evidence, other than the one transaction with Field and Yeller, that Lawson was in the wholesale liquor business. Likewise there was no direct evidence that Lawson had not paid the special tax. Section 5112(a) of the Internal Revenue Code of 1954, 26 U.S.C.A. § 5112(a), defines a wholesale dealer in liquors as one "who sells, or offers for sale, foreign or domestic distilled spirits, wines, or beer in quantities of 5 wine gallons or more to the same person at the same time." This court has held, under substantially similar definitions of section 3254(b) of the Internal Revenue Code of 1939, 26 U.S.C.A. § 3254(b), that "a single sale is to be interpreted in the light of all the circumstances, and it may vary from being little or no evidence up to the point of being convincing evidence that the seller is carrying on the business; and that, in order to convict, the jury should be satisfied that the defendant either had liquor on hand, or was ready and able to procure it, in either case with the purpose of selling some or all of it to such persons as he might from time to time find or conclude to accept as customers." Wilson v. United States, 6 Cir., 1945, 149 F.2d 780, 781; Bailey v. United States, 6 Cir., 1919, 259 F. 88, 92. The rule is just as applicable to the present condemnation proceeding as it was to the criminal prosecutions involved in the cases cited. It would, therefore, have been competent for the court in this case to determine from the evidence of the single sale of 75 gallons of whiskey and all the other circumstances of the case whether Lawson was engaged on August 4, 1957, in the business of a wholesale dealer in liquors.

■ This brings us to the final question; whether the evidence would have supported a finding that Lawson had willfully failed to pay the tax imposed upon wholesale liquor dealers by section 5111 (a) of the Internal Revenue Code. As to this it is sufficient to say that it was not incumbent upon the Government to adduce positive evidence to support this negative averment in the libel if the court should find that its truth was fairly, even though inferentially, indicated by the circumstances of the case as established by the evidence, since if it were untrue it could readily have been disproved by Lawson by the production of documentary evidence of payment of the tax. Rossi v. United States, 1933, 289 U.S. 89, 53 S.Ct. 532, 77 L.Ed. 1051; Symons v. United States, 9 Cir., 1949, 178 F.2d 615, 621; Faraone v. United States, 6 Cir., 1919, 259 F. 507, 509.

For the reasons stated the case must go back to the district court for rehearing and reconsideration.

The order of the district court will be reversed and the cause will be remanded for further proceedings not inconsistent with this opinion.