

Macon L. Weaver, U. S. Atty., and R. Macey Taylor, Asst. U. S. Atty., for the United States.

Longshore & Longshore, Birmingham, Ala., for claimant.

GROOMS, District Judge.

On October 10, 1960, ATU Agent Odis B. Hunter, met Ben Grady Gilbert, Clinton James Gilbert and Daniel Fred Sandlin at the Fox Cafe near Bessemer, Alabama. The two Gilberts and Sandlin came to the Cafe in the Ford Galaxie automobile involved herein. Negotiations were concluded for the purchase by Investigator Hunter of 100 gallons of untax-paid whisky, and Sandlin took agent Hunter's automobile in which to load and transport the whisky. Investigator Hunter was then driven by the two Gilberts in the automobile which the Government seeks to forfeit to a prearranged rendezvous point, where Sandlin met them with Hunter's automobile, which contained the 100 gallons of illicit whisky. While they were still in the above-described Ford Galaxie, Hunter paid to Ben Grady Gilbert the agreed price of $340.00 for the whisky. The whisky was removed from the scene while it remained in Hunter's automobile and was never placed in the Ford.

**UNITED STATES of America,**
Libellant,

v.

**ONE 1960 FORD GALAXIE SEDAN,**
**Motor No. OA51X132902.**

**Civ. A. No. 9837.**

United States District Court
N. D. Alabama, S. D.

Dec. 1, 1961.

Is the Ford subject to forfeiture under Section 7302 of Title 26 U.S.C.A.? This section, in pertinent part, authorizes the seizure and forfeiture of "property intended for use in violating * * the internal revenue laws, or regulations

prescribed under such laws, or which has been so used * * *."

As noted in United States v. One 1952 Lincoln Sedan, Motor No. 52LP22535H, 5 Cir., 213 F.2d 786:

"The statute does not place any express limitation on the manner in which property intended for use in violation of the revenue laws is employed * * *."

The car in the cited case was being used as a convoy or decoy car and to block the federal officers' pursuit of a truck that was being used to transport 150 gallons of nontax-paid whisky. Judge Hutcheson dissented from this decision.

In First National Bank of Atlanta v. United States, 5 Cir., 249 F.2d 97, the car was also being used as a lookout for another car that was carrying 42 gallons of nontax-paid liquor, and to block traffic to facilitate the movement of the other car. Judge Hutcheson wrote the opinion, reaching a conclusion contrary to that reached by the Court speaking through Judge Borah in the first cited case. Judge Borah dissented. The line between the two cases is so thin that it defies detection.

The case here involved is not a "convoy" case, nor does it fall within the category delineated in United States v. Lane Motors, 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, where it was held that the vehicle was not subject to forfeiture as being used "*in*" violating the revenue law" where "used solely for commuting to an illegal distillery."

The Court, in United States v. General Motors Acceptance Corp., 5 Cir., 239 F. 2d 102, at page 104, stated that:

"The rule is different, however, where the vehicle is used not merely for the convenience of the operator in commuting, but *also as an active aid in violating revenue laws*, even though not for the transportation of any commodities subject to seizure. United States v. One 1952 Lincoln Sedan, 5 Cir., 213 F.2d 786; * *." (Emphasis supplied.)

Applying the "active aid" tests in the manufacture, sale, or transportation, the answer to the question here involved is brought into focus.

In United States v. One 1941 Buick Coach, S.D.Ala., 85 F.Supp. 402, the Court held that an automobile used by a seller of nontax-paid liquor to reach an agreed delivery place was subject to forfeiture, although spirits had not been transported in the car. The Court stated that the violator's movements in possessing the liquor "were facilitated by the use of the Buick." To like effect is the case of United States v. One Chevrolet Stylemaster Sedan, D.Col., 91 F.Supp. 272, although in that case the proof established that the taxicab had been used a number of times in like manner.

The Court has been supplied with two unreported cases, decided by Judge Hooper in March, 1957. One of these is entitled "United States v. One 1956 Model Chevrolet DeLuxe Coach, Case No. 5727 " [1] and the other, "United States v. One 1956 Oldsmobile Holiday Coupe, Case No. 5738" [2] in the United States

---

1. The findings summarize the following facts:

"State Agent Richardson having cause to suspect that Cherry was engaged in the liquor business approached Cherry with the idea of purchasing certain quantities of non-tax-paid liquor from him. Cherry agreed to sell the liquor to the agent and proper arrangements were made for its delivery. The arrangements were made at a filling station which Cherry was operating * * *.

"Cherry used the Chevrolet (offending car) for purposes of transportation to the point near West View Cemetery for a meeting there with Agent Richardson and closing the sale of the liquor. He then used the car to drive over to the place where the liquor car was stalled, got one of his employees in the car with him at that point, and returned to the place of meeting. He then used it to carry Agent Richardson from the above point back to the place where the liquor car was stalled and sat in the car while the money was counted out and paid."

2. The findings reveal the following facts:

"State Agent Breitman made arrangements with Ogletree to purchase a quan-

District Court for the Northern District of Georgia, Atlanta Division. These cases cannot be distinguished on the facts from this case, including the delivery of the purchase price of the liquor in the vehicles involved. Judge Hooper stated that he felt bound by the reasoning in the case of United States v. General Motors Acceptance Corporation, supra.

The Court has reviewed the cases cited in claimant's brief and finds that they are distinguishable or that they do not meet the "active aid test." In transporting the customers in the car to the point where the sale was consummated by the taking of delivery and the passing of the purchase price, the car was being used in the course of the illicit operations. See Simpson v. United States, 9 Cir., 272 F. 2d 229.

A sale cannot be effected without a customer. Lending active aid to the customer, as was the case here, is in furtherance of the sale.

The Government has met the "active aid test." The claim of Ben G. Gilbert is due to be denied.

It is, therefore, ordered, adjudged and decreed as follows:

1. That the claim of Ben G. Gilbert be and the same is hereby denied.

2. That the Libelant is granted the relief prayed for, and the vehicle, viz.,

one 1960 Ford Galaxie Sedan automobile, Motor No. OA51X132902, be and the same is hereby forfeited to the United States, and is directed to be delivered to the Regional Commissioner, Internal Revenue Service, Treasury Department, Atlanta, Georgia. Costs are not taxed.

tity of liquor from the latter, and at the appointed time and place the parties met. Agents Breitman and Richardson came to the rendezvous in a Mercury automobile belonging to Richardson. Ogletree came there in the suspect Oldsmobile. There next came to this place (the intersection of Simpson Street and West Lake St. in Atlanta) a Plymouth automobile driven by an employee or associate of Ogletree, and the three cars were there parked together. The three cars then drove off to another locality where all of them again parked. At that point Richardson got out of his Mercury and went to Ogletree's Oldsmobile, and Ogletree's employee got out of the Plymouth and also came to the Oldsmobile. Ogletree then instructed his employee to take the agent's Mercury and load fifty gallons of liquor in it, whereupon the employee left in the Mercury and after about forty-five minutes time returned with the Mercury which contained fifty gallons of non-tax-paid whiskey. While the Mercury was gone Ogletree and Richardson sat in Ogletree's Oldsmobile, the Plymouth being parked nearby, and Ogletree then stated to Richardson that he, Ogletree, had about six stills from which he was getting whiskey, and he had other automobiles which he used for hauling whiskey, that he had lost one of them three times but had bought it back.

"When Ogletree's employee returned to the scene with the Mercury containing the liquor Richardson, still sitting in Ogletree's Oldsmobile, paid the latter $175.00 in cash, it was then dark and Ogletree turned on the lights of the vehicle to count out the money. Richardson then got out of the Oldsmobile, got in his Mercury and drove away * * *."