UNITED STATES of America

v.

ONE 1962 FORD 2-DOOR SEDAN, Motor
No. 2N61X–118689.

C. A. 590.

United States District Court
W. D. Virginia,
Danville Division.

Aug. 26, 1964.

R. R. Ryder, Martin & Ryder, Richmond, Va., for plaintiff.

James C. Roberson, Asst. U. S. Atty., Roanoke, Va., for defendant.

MICHIE, District Judge.

This is a proceeding under § 7302 of the Internal Revenue Code of 1954, 26 U.S.C. § 7302, for the forfeiture of an automobile. Section 7302 provides in part that: "It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property." The United States has alleged that the 1962 Ford automobile in controversy was used and intended for use in violation of the Internal Revenue Laws, more particularly, §§ 5205(a) (2), 5604(a) (1) and 5601(a) (12) prohibiting the transportation and possession of non-tax paid liquor.

The facts have been stipulated and are not in dispute. The automobile was purchased in December of 1961 by Thomas Dalton Young, a known dealer in illegal liquor with a record of liquor violations dating back to 1951, and was titled in his wife's name. His wife, however, does not have a driver's license. During October and November 1962 an undercover investigation was being conducted in the Western District of Virginia by the Alcohol and Tobacco Tax Division of the United States Treasury Department. In the process of this investigation an undercover agent for the government gained the confidence of Young who was engaged in the sale of illegal liquor and assisted him in arranging sales in the Danville, Virginia, area.

On November 8, 1962 Young had arranged to have 156 gallons of illegal liquor transported to Danville from Tennessee. That evening he drove the car in controversy to Danville where he met the government undercover agent and the prospective purchaser of the illegal liquor. The three of them rode in the 1962 Ford with Young driving, to a secluded place about two miles from Danville where Young instructed the undercover agent (who was working as his helper) to deliver the illegal whiskey after the arrival of the Tennessee whiskey car. The three men then rode up and down the highway for some two hours watching for the car which was to deliver the whiskey from Tennessee. Contact was eventually made and the two cars proceeded to the previously designated place of concealment. The Tennessee car was driven by the undercover agent and still contained the illegal whiskey. The 1962 Ford followed the whiskey

car with Young driving and the purchaser and two original occupants of the whiskey car as passengers. On arriving at the pre-arranged place of concealment the five men unloaded 36 gallons of the liquor and stored it. The remainder of the load was taken elsewhere. Later that evening Young received payment for the 156 gallons of whiskey from the purchaser, paid the two men who delivered the whiskey from Tennessee and drove away in the 1962 Ford with the remainder of the proceeds.

Young has pleaded guilty to these violations of the liquor laws and was sentenced accordingly. The government now seeks the forfeiture of the 1962 Ford used by Young in carrying out the transaction. The vehicle was seized in due course and has been claimed by its titular owner, Mrs. Young.

The claimant relies upon the Supreme Court's decision in United States v. Lane Motor Co., 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622 (1959), in which the court held that a vehicle used solely for the convenience of the operator in commuting to and from an illegal distillery was not used in violation of the revenue laws. Here no doubt the automobile was used to carry its operators to and from the place of the liquor violations. However, the facts demonstrate that the car in question here was far more deeply enmeshed in the scheme of violation than the vehicle involved in United States v. Lane Motor Co., supra. While the automobile was never used to transport the illegal whiskey, it certainly served as an active aid to Young's scheme of violation and was thus forfeit under the rationale of United States v. G. M. A. C., 239 F.2d 102 (5th Cir. 1956). Young's scheme depended for its success on secrecy and mobility. The automobile served as Young's command post. With its aid he brought together the scheme's essential elements. Not only was the vehicle used to transport the customer to the point of sale, as was the case in United States v. One 1960 Ford Galaxie Sedan, 203 F.Supp. 387 (N. D.Ala.1961), but it also served to locate the goods to be sold and to direct the goods to their place of concealment. From the vehicle Young pointed out to his purchaser and his helper (the agent) the proposed place of concealment. From the vehicle Young patrolled the highways of Danville for a period of two hours in search of the whiskey car from Tennessee. And with the vehicle Young transported the purchaser and the supplier to the place of concealment and the eventual completion of the transaction. The vehicle served a special purpose but one closely and immediately related to the successful accomplishment of the overall illegal scheme and hence was forfeit to the government under § 7302. See United States v. One 1956 Ford Tudor Sedan, 253 F.2d 725, 726 (4th Cir. 1958).

An order will be entered accordingly.