**UNITED STATES of America,**
**Libelant,**

v.

**ONE 1964 CHEVROLET IMPALA AUTO-MOBILE, Serial No. 41447C122862.**

**Civ. A. No. 5019.**

United States District Court
D. South Carolina,
Spartanburg Division.

Heard Nov. 10, 1965.

Decided Nov. 18, 1965.

John C. Williams, U. S. Atty., and James D. McCoy, III, Asst. U. S. Atty., Greenville, S. C., for libelant.

Elford H. Morgan, of Butler, Chapman, & Parler, Spartanburg, S. C., for petitioner First Commercial National Bank, Spartanburg, S. C.

John Munn, Spartanburg, S. C., for Eddie Roberson.

HEMPHILL, Chief Judge.

Action for remission of forfeited automobile, allegedly used in violation of internal revenue laws as contemplated in 26 U.S.C. § 7302 [1] initiates issues for the Court. The fifth paragraph of the original libel, filed by the United States of America July 22, 1965 recited:

> That on May 28, 1965, Investigators of the Alcohol and Tobacco Tax, Internal Revenue Service, Treasury Department, did seize on land in Spartanburg County, South Carolina, within the Western Judicial District of South Carolina, Spartanburg Division, as forfeited to the United States, certain property to wit: One 1964 Chevrolet Impala Automobile, Serial No. 41447C122862, its equipment and accessories, of the appraised value of $2,700.00, which vehicle was used on April 14, 1965 by Eddie Roberson in Spartanburg County, South Carolina, in violation of the internal revenue laws of the United States in the conduct of the business of retail dealer in liquors

---

1. Title 26 U.S.C. § 7302 provides: *Property used in violation of internal revenue laws.* It shall be unlawful to have or possess any property intended for use in violating the provisions of the internal revenue laws, or regulations prescribed under such laws, or which has been so used, and no property rights shall exist in any such property. A search warrant may issue as provided in chapter 205 of title 18 of the United States Code and the Federal Rules of Criminal Procedure for the seizure of such property. Nothing in this section shall in any manner limit or affect any criminal or forfeiture provision of the internal revenue laws, or of any other law. The seizure and forfeiture of any property under the provisions of this section and the disposition of such property subsequent to seizure and forfeiture, or the disposition of the proceeds from the sale of such property, shall be in accordance with existing laws or those hereafter in existence relating to seizures, forfeitures, and disposition of property or proceeds, for violation of the internal revenue laws.

without the special tax imposed on said retail liquor dealer by Section 5121(a) of the Code having been paid. That said retail liquor business was being conducted by the said Eddie Roberson, Wilfred Arrington, and Alton Thomas Trotter without the persons named in this paragraph, or any other persons having paid the special tax imposed on every retail dealer in liquors by Section 5121(a) of the Code. That, more specifically, said vehicle was used on April 14, 1965 in then soliciting the sale of 36 gallons of untaxpaid distilled spirits to one Cora Spears by the said Eddie Roberson, which said untaxpaid distilled spirits thereafter on April 14, 1965 were delivered to Cora Spears in a vehicle other than said 1964 Chevrolet Impala Automobile, and the said 1964 Chevrolet Impala Automobile was used as aforesaid with intent to defraud the United States of the tax due by persons engaged in the business of retail dealer in liquors in violation of Sections 5686(a), 5691 and 7302 of the Code. Ever since said seizure said property has remained in the Western Judicial District of South Carolina in the custody of the Alcohol and Tobacco Tax, Internal Revenue Service, Treasury Department, and is now in storage at Cudd & Company, 150 North Liberty Street, Spartanburg, South Carolina.

2. Title 26 U.S.C. § 5121 provides: *Imposition and rate of tax.* (a) Retail dealers in liquors.—Every *retail dealer in* liquors shall pay a special tax of $54 a year. The Secretary or his delegate may by regulations provide for the issuance of a stamp denoting payment of such special tax as—
 (1) a "retail dealer in wines" or a "retail dealer in wines and beer" if wines only, or wines and beer only, as the case may be, are sold by a retail dealer in liquors, or * * *."

3. Title 26 U.S.C. § 5691 provides: Penalties and forfeitures for nonpayment of special taxes relating to liquors. Any person who shall carry on the business of a brewer, rectifier, wholesale dealer

A sixth paragraph sought to hang the government's hat on allegations that "said vehicle had concealed and deposited therein ½ pint of distilled spirits * *." After failure of proof, this was abandoned.

At the hearing before the Court the uncontradicted evidence revealed that Eddie Roberson had violated 26 U.S.C. § 5121(a),[2] and 26 U.S.C. § 5691.[3] This Court does not recall the sentence ultimately imposed upon him for such departures from lawful conduct, but he was in court by order of Court directing that he be brought here from a Federal Prison. The government has, unequivocally, exacted its "pound of flesh" and he is paying his debt to society for violation of the tax (internal revenue) statutes.

Other facts reveal that Eddie Roberson, is the registered owner of a libel automobile, on which the First Commercial National Bank, Spantanburg, South Carolina, has a lien equal to its value. On the day that the automobile is alleged to be subject to forfeiture, Roberson drove the automobile to the house of a female friend, picked her up, made a telephone call and then drove to the house of a woman in Federal employment. This woman had been previously contacted by Federal ATU Agents, furnished with names of suspected bootleggers and instructed to contact them. Roberson drove the libeled automobile to the house of the contact woman, and was given an order by her for 36 gallons of bootleg

in liquors, retail dealer in liquors, wholesale dealer in beer, retail dealer in beer, or manufacturer of stills, and willfully fails to pay the special tax as required by law, shall, for every such offense, be fined not more than $5,000, and imprisoned not more than 2 years. All distilled spirits or wines, and all stills or other apparatus, fit or intended to be used for the distillation or rectification of spirits, or for the compounding of liquors, owned by such person, wherever found, and all distilled spirits or wines and personal property found in the distillery or rectifying establishment, or in any building, room, yard, or enclosure connected therewith and used with or constituting a part of the premises, shall be forfeited to the United States.

**332**

liquor, but did not take order, or money, while in the car. He then made contact with other liquor agents and 36 gallons were delivered in someone else's truck. No untaxed liquor was ever present in the libeled automobile nor was any delivery made in it or from it.

There is uncontradicted testimony from the automobile owner and the woman companion whom he picked up that prior to the time they drove out to the Federal contact woman, that they were riding in an automobile purely for entertainment. The companion stated that the only reason she was in the automobile was for purely social reasons and that she knew nothing of any liquor dealings at any time. Roberson testified that the contact woman had called his house earlier that morning and left her number with his wife (hearsay not objected to). While he and his lady friend were riding, he decided to call the woman and find out why she wished to see him.

There is controversy over whether liquor was ever mentioned over the telephone. The automobile owner denies that liquor was ever mentioned and testified that the woman instructed him to drive out to her house, where she wished to talk to him. He testified that if any liquor was mentioned, that he would certainly have taken the order over the telephone rather than take a chance of going out to her house; that he did not know why the woman wished to speak to him, until he arrived at her house. The contact woman admitted that she was given a bonus for the automobile owner's subsequent arrest at the time the liquor was delivered in the truck, which was seized, libeled forfeited and sold.

The tax statutes provide forfeiture as a facet of punishment for, deterrent against, violation of the law. Congress in its wisdom in enacting the revenue laws determined that the vehicles used in the production of the illegality were themselves tarnished by the iniquitous practice. But Congress did not intend, nor design, abandonment of reason, promote or expect extreme interpretations that would work hardship on those not otherwise participating. We have here a state of facts in which the Bank made some inquiry, but admittedly did not make a sufficiency to protect them. Fortunately for the Bank, another issue gives them protection.

■ At the hearing counsel for owner, Bank and government were present. They agreed orally on a sale of the car to prevent depreciation from effecting further ravages on the value. Counsel stated there was no statutory direction, or precedent, for the sale. The Court feels a sale is reasonable and proper, as it will take judicial notice that age quickly and surely takes its toll of the value of an automobile.

One wonders if next we are to have an invasion of the right of free communication. What of the telephone? According to some of the testimony many of the government traps were set up by the woman by use of a telephone. Shall we say now that the telephone should be forfeited in these cases? In this case since the original trap was attempted by telephone? This Court will not, if government ambition persists to such degree, decree or direct such forfeiture. Or, if the contact or order were made by telegraph, would the bicycle of the messenger be subject to forfeiture if *he knew* the purpose and object of his mission? If the professional maxim "hard cases make bad law" is given credence, we pursue here a path of difficulty which has no foreseeable end of hardship and permissive injustice.

■ The Bank, in this case, must stand in the shoes of Roberson because the government has met, and Bank has not controverted, conditions precedent required in 18 U.S.C. § 3617(b).[4] Compli-

4. In Title 18, U.S.C. § 3617(b) the conditions precedent to remission or mitigation are stated as follows:
(1) that he has an interest in such vehicle * * * as owner or otherwise, which he acquired in good faith,
(2) that he had at no time any knowledge or reason to believe that it was being or would be used in the violation of laws of the United States or of any State relating to liquor, and (3) if it appears that the interest asserted by

ance with all three conditions precedent to remission must be proved by a claimant before the court has any right to remit or mitigate a forfeiture. Universal Credit Company v. United States, 111 F. 2d 764 (4th Cir. 1940). The granting of relief under the statute is not a matter of equity, therefore the court has no power to relax the express provisions of the statute. United States v. Dodd, 205 F. 2d 260 (5th Cir. 1953); United States v. One Hudson Coupe, 110 F.2d 300 (4th Cir. 1940). The conditions must be literally complied with and substantially fulfilled. One 1950 Mercury Coupe v. United States, 213 F.2d 133 (5th Cir. 1954).

 Remission is not a matter of right, however, and even though all the statutory conditions are met, whether there shall be a remission or mitigation is still within the sound discretion of the court. United States v. One Ford Coach, 93 F.2d 771 (4th Cir. 1938), aff'd 305 U. S. 564. Although it may do so, the court is not compelled to exercise its discretion in remitting a forfeiture where the minimum statutory conditions are complied with if there are facts and circumstances which gave an unsatisfactory color or character to the transaction. Fulfillment of the conditions precedent permits the court to exercise its discretion, and equity and good conscience then become the controlling considerations. United States v. One 1936 Model Ford Coach, 307 U.S. 219, (1939). If the claimant has been negligent, or in good conscience ought not to be relieved, the court should deny his application.

 Once it is established that claimant's interest arises out of an agreement under which a person having a record or reputation for violating the liquor laws has a right in the vehicle then the claimant must show that before he acquired his interest he made inquiry and was informed that such person had no record or reputation. This inquiry is not considered in conformance with 18 U.S.C. § 3617(b)(3) if it was made and the response thereto received subsequent to the acquisition of the claimant's interest. United States v. National Discount Corporation, 104 F.2d 611 (7th Cir. 1939).

The inquiry changes, now, its direction. Is the car, the *RES* here sought to be forfeited, to be colored with the wrong of the owner, under the facts as they here exist? The question demands treatment of those cases cited and relied upon by the government.

It cites United States v. Lawson, 266 F.2d 607 (6th Cir. 1959), clearly distinguishable from the facts under consideration; there an undercover agent was taken to the still site in the automobile in question, and *piloted* out of town after the illegal spirits were procured. Similarly, United States v. One 1960 Ford Galaxie Sedan, 203 F.Supp. 387 (N.D. Ala.1961) is not in point because the circumstances were such that the automobile was used to drive a customer to a prearranged rendezvous point. In the case before this Court, there is no evidence whatever that Roberson knew what the government's undercover agent, whom he had never before met, wanted.

Also cited is Nocita v. United States, 258 F.2d 199 (9th Cir. 1958) which is not apposite; in that case the automobile was used to collect winnings from illegal

the claimant arises out of or is in any way subject to any contract or agreement under which any person having a record or reputation for violating laws of the United States or of any State relating to liquor has a right with respect to such vehicle * * *, that, before such claimant acquired his interest, or such other person acquired his right under such contract or agreement, whichever occurred later, the claimant, his officer or agent, was informed in answer to his inquiry, at the headquarters of the sheriff, chief of police, principal

Federal internal-revenue officer engaged in the enforcement of the liquor laws, or other principal local or Federal law-enforcement officer of the locality in which such other person, acquired his right under such contract or agreement, of the locality in which such other person then resided, and of each locality in which the claimant had made any other inquiry as to the character or financial standing of such other person, that such other person had no such record or reputation.

gambling activity. It is important in making the distinction to note that in Nocita the car was actually used in collecting the illegal winnings. United States v. General Motors Acceptance Corp., 239 F.2d 102 (5th Cir. 1956) is in the same category because there the vehicle sought to be forfeited was used to *receive* illegal wagers.

The government's reliance upon United States v. One 1941 Buick Coach Automobile, D. C., 85 F.Supp. 402, is misplaced. In that case products identifiable with illicit whiskey were found in the automobile. Such is not remotely the case in the instant matter.

 This Court examines the "use" of the automobile by Roberson. No liquor was transported. There is *no* evidence that parts of a still, sugar, grain, fruit jars, or any of the other articles or materials associated with making, transporting and selling illegal whiskey were ever in the automobile. The trap was accomplished IN THE RENDEZVOUS HOUSE; no part of the arrangement took part in the automobile. At most the car was used for commuting, but there is not even evidence that at the time of the journey to the rendezvous house Roberson had any knowledge of the purpose of the call to come to the house. As for the return, no evidence was presented as to direction or purpose. The use of another vehicle, the truck, points in another direction than that of use of the automobile than "use * * * in violation of the internal revenue laws of the United States." [5]

This Court's direction from the Supreme Court of the language in United States v. Lane Motor Co., 344 U.S. 630, 73 S.Ct. 459, 97 L.Ed. 622, (1953) sounds loud and clear:

The district judge found the facts to be that the truck and automobile had each been used by the operator of an illegal distillery to drive a number of miles from his home and then parked at a point one-half mile or more from the distillery, the operator walking the rest of the way. The district judge found that the Government had not shown, as it had alleged, that the vehicles had been used for transporting materials or utensils for use at the distillery, and ruled that the facts shown did not justify a forfeiture. The Court of Appeals for the Tenth Circuit affirmed, 199 F.2d 495.

\* \* \* \* \* \*

We think it clear that a vehicle used solely for commuting to an illegal distillery is not used in violating the revenue laws.

No business having been carried on, in, or about the automobile, is forfeiture just here? "The burden was on the government to show that the vehicle had been used as charged, and the law is well settled that the mere use of a car as transportation to and from a business prohibited under § 7302 does not subject it to forfeiture." [6] Risking accusation of a play on semantics, we are almost to the conclusion that the term "use" is, in actuality, a substitute for the term "misuse". This Court is unwilling to depart from the sound reasoning quoted, or, for that matter, from the now ancient phrase of guidance of this Court's generation; "stare decisis."

In view of the lack of evidence to support forfeiture this Court borrows from the opinion in One 1958 Plymouth Sedan v. Com. of Pennsylvania: [7] "There is nothing even remotely criminal in possessing an automobile. It is only the * * * use * * *." The criminality of Roberson did not attach, does not stain, the 1964 Chevrolet.

---

5. This is from the libel of information, the crux of the matter.

6. United States v. One 1959 Pontiac Tudor Sedan, 5 Cir., 301 F.2d 411.

7. 380 U.S. 693, 699, 85 S.Ct. 1246, 14 L.Ed.2d 170.

335

The Order of Sale [8] is vacated, upon condition that owner, or mortgagee Bank, pay any costs already incurred as a result of, and since the Order of Sale.

The Chevrolet shall be released to Attorney John Munn counsel for Roberson; further action is beyond the jurisdiction of this Court.

Remission of forfeiture and discharge of the libel is directed.

And it is so ordered.

8. Which read:

Upon the trial of the above-entitled case, the Court was of the opinion that the libeled vehicle should be sold at public auction by the United States Marshal for the District of South Carolina, Western Division; now, therefore,

IT IS ORDERED: That the United States Marshal for the District of South Carolina, Western Divisions, is hereby directed to sell the libeled vehicle at public auction at the Spartanburg County Courthouse, to the highest bidder, for cash, at the earliest possible time after giving notice of said sale by inserting a notice in the Spartanburg Herald, a newspaper of general circulation in Spartanburg County, South Carolina; said notice to appear no less than ten (10) days prior to the said sale, and that the said United States Marshal shall post public notices of said sale in the County Courthouse, and at the United States Post Office, not less than fifteen (15) days prior to said sale.

IT IS FURTHER ORDERED: That the United States Marshal for the District of South Carolina, Western Divisions, shall turn over the proceeds of said sale to the Clerk of Court for the District of South Carolina in Greenville, South Carolina, and that the said proceeds shall be held by the Clerk of Court until further order of this Court; and

IT IS SO ORDERED,