Commonwealth, Appellant, *v.* One 1958 Plymouth
Sedan (McGonigle).

Argued September 14, 1962. Before RHODES, P. J., ERVIN, WRIGHT, WOODSIDE, WATKINS, MONTGOMERY, and FLOOD, JJ.

*Russell C. Wismer,* Special Assistant Attorney General, with him *George G. Lindsay,* Assistant Attorney General, and *David Stahl,* Attorney General, for Pennsylvania Liquor Control Board, appellant.

*Louis Lipschitz,* for appellee.

OPINION BY ERVIN, J., November 15, 1962:

On December 16, 1960 two enforcement officers of the Pennsylvania Liquor Control Board were stationed on the Admiral Wilson Boulevard in New Jersey, the approach to the Benjamin Franklin Bridge leading into Philadelphia, Pennsylvania. At 6:30 a.m. on the above date the officers saw a black Plymouth four-door sedan, bearing Pennsylvania registration plates, approaching the bridge. The car was quite low in the rear and the officers followed the car across the bridge into Philadelphia and on Vine Street, west of Sixth Street, in Philadelphia, the officers stopped the car, identified themselves and questioned the operator, George McGonigle. In the rear of the car and in the

trunk the officers found 375 bottles (31 cases) of high priced whiskey and wine not bearing Pennsylvania tax seals. The operator of the car, McGonigle, stated to the officers that he had been hired to deliver this liquor from Margate to Philadelphia for $30.00, that he knew it was unlawful but took the chance. McGonigle made no objection to the search of the automobile. The car and liquor were seized and McGonigle was arrested. The officers had neither a search nor a body warrant. A petition for the forfeiture of the car was filed in the court below and, after hearing, the petition was dismissed and it was directed that the car be returned to the owner. The court held that the seizure was founded upon evidence illegally obtained. The Commonwealth appealed.

The procedure for the forfeiture of this car is provided by §601 of the Liquor Code (as amended by the Act of April 20, 1956), 47 PS §6-601, and in effect states: "No property rights shall exist in any liquor, alcohol or malt or brewed beverage illegally manufactured or possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may, at the discretion of the board, be instituted in the manner hereinafter provided."

The owner of the automobile presented no evidence and there can be no question but that the automobile was being used to illegally transport untaxed liquor from New Jersey into Pennsylvania.

The Fourth Amendment to the United States Constitution prohibits only unreasonable searches and seizures.

We repeat what we said in *Com. v. One 1955 Buick Sedan*, 198 Pa. Superior Ct. 133, 137, 138, 182 A. 2d

280: "The leading case in this field is Carroll v. United States, 267 U. S. 132, 149, 69 L. ed. 543, wherein Chief Justice TAFT said: 'On reason and authority the true rule is that if the search and seizure without a warrant are made upon probable cause, that is, upon a belief, reasonably arising out of circumstances known to the seizing officer, that an automobile or other vehicle contains that which by law is subject to seizure and destruction, the search and seizure are valid. The 4th Amendment is to be construed in the light of what was deemed an unreasonable search and seizure when it was adopted, and in a manner which will conserve public interests as well as the interests and rights of individual citizens.'

". . . At p. 153 it was further said: 'We have made a somewhat extended reference to these statutes to show that the guaranty of freedom from unreasonable searches and seizures by the 4th Amendment has been construed, practically since the beginning of the government, as recognizing a necessary difference between a search of a store, dwelling house, or other structure in respect of which a proper official warrant readily may be obtained, and a search of a ship, motor boat, wagon, or automobile for contraband goods, where it is not practicable to secure a warrant because the vehicle can be quickly moved out of the locality or jurisdiction in which the warrant must be sought.

" 'Having thus established that contraband goods concealed and illegally transported in an automobile or other vehicle may be searched for without a warrant, we come now to consider under what circumstances such search may be made. It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor, and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travelers may be so stopped in cross-

ing an international boundary, because of national self-protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise.'

"It was further said, at pp. 155, 156: 'The measure of legality of such a seizure is, therefore, that the seizing officer shall have reasonable or probable cause for believing that the automobile which he stops and seizes has contraband liquor therein which is being illegally transported.' "

In the case of *Henry v. United States*, 361 U. S. 98, 80 S. Ct. 168, a case greatly relied upon by the appellee, the Court, in the majority opinion, at page 104, said: "The fact that packages have been stolen does not make every man who carries a package subject to arrest nor the package subject to seizure. The police must have reasonable grounds to believe that the particular package carried by the citizen is contraband. Its shape and design might at times be adequate. *The weight of it and the manner in which it is carried might at times be enough.*" (Emphasis supplied)

We also add that the place where the search is made should be taken into consideration.

With these principles in mind, let us review the facts in the present case. Officer Snyder testified: "That I had reason to believe that a late model black four-door sedan, Plymouth, was delivering liquor illegally into Pennsylvania from a dealer in South Jersey." In cross-examination he stated that he got this information from previous observations, although he had admitted that he had never seen this car or the

driver before. The "previous observations" were not explored any further. A further exploration might have revealed more information concerning the source of the officer's knowledge. This car attracted the officers' attention because it was quite low in the rear. When the officers first observed the car, it was about to enter the Delaware River Bridge leading from the State of New Jersey to the State of Pennsylvania. A state should have the right to stop a traveler coming into the state and to search his belongings to ascertain whether he is bringing into the state any property upon which a state tax is due. The Commonwealth of Pennsylvania has a sales tax, a liquor tax and a cigarette tax, and if its officers may not stop vehicles coming into the state to ascertain whether its laws are being violated, law enforcement will be greatly impeded.

Many times travelers are stopped at state borders and their cars are searched to ascertain whether diseased vegetation is being brought into the state. Nobody complains about this or feels that his privacy is being unduly invaded. Airplane passengers are many times required to open their luggage for inspection to ascertain whether bombs are being brought upon the plane. These are concomitants of a modern civilization and are accepted by most people without objection for their own protection and best interests. Also, the search was on December 16, which was at a time when the officers might well believe illegal liquor would be transported into Pennsylvania to meet the demands of the holiday trade. If the officers had left the scene to obtain a search warrant, the evidence would undoubtedly have been lost. The back rest of the rear seat had been removed so that the liquor could be stored in the back part of the car in addition to being stored in the rear trunk. Just what the officers could observe through the windows of the car when it was stopped was not brought out in the testimony. Undoubtedly

they could have seen what was on the rear seat of the car without making any search. Whether they could tell from this point of view that the liquor did not bear Pennsylvania seals, we do not know. There can be no doubt that a misdemeanor (the transportation of untaxed liquor) was being committed in their presence. Under all of the circumstances, we are of the opinion that the search and seizure were reasonable. Mr. Justice CLARK, in his dissenting opinion in the *Henry* case, said at page 106: "When an investigation proceeds to the point where an agent has reasonable grounds to believe that an offense is being committed in his presence, he is obligated to proceed to make such searches, seizures, and arrests as the circumstances require. It is only by such alertness that crime is discovered, interrupted, prevented, and punished. We should not place additional burdens on law enforcement agencies."

Order reversed and it is hereby ordered that the 1958 Plymouth sedan bearing Manufacturer's Serial No. LPIN3159 be and the same is hereby forfeited and condemned and it is ordered that the vehicle shall be delivered to the Pennsylvania Liquor Control Board for its use or sale or disposition by the board in its discretion, in accordance with the Act of 1951, April 12, P. L. 90, art. VI, §603(c), as amended, 47 PS §6-603(c).

---

DISSENTING OPINION BY MONTGOMERY, J.:

Although the United States is rightfully proud of the various freedoms set forth in its Constitution, it also proudly boasts of another one not specifically mentioned. I refer to the freedom of travel from one state to another without visa or barrier.

As I read the opinion of the majority in this case, that freedom will exist no longer. If automobiles may be stopped at the state lines and searched for contra-

band without cause or reason, traveling here will be no different than going from country to country in other parts of the world.

I find no reasonable cause in the present case for stopping and searching the automobile of the appellee; nor do I interpret any of the evidence or the contention of the Commonwealth as indicating that the search was consensual. The lower court was of the same opinion.

Therefore, I respectfully dissent.

---

DISSENTING OPINION BY FLOOD, J.:

I cannot agree that there was reasonable or probable cause for the search in this case. The mere fact that the car looked like another one of which the officers had some justifiable suspicions does not give ground for reasonable suspicion that this one was being used to break the law. Admittedly this was not the car which the officers were on the lookout for.

Beyond this the only ground for suspecting that the car was carrying contraband was that it was "quite low in the rear". I do not believe that the law sanctions the search of a car which appears to be low in the rear because this fact alone engenders suspicion in the minds of the enforcement officers that it might be carrying liquor illegally into the State. Taken with other circumstances, the low rear might give ground for reasonable suspicion. In *Patenotte v. United States,* 266 F. 2d 647 (1959), the court listed five facts to be considered in determining whether there is proper cause to stop and search a vehicle: (1) the reputation of, or the informant's report concerning, the occupants; (2) the reputation of the vehicle or its owners; (3) the condition of the vehicle (e.g., weighted down); (4) information from informers as to the illegal nature of the trip; and (5) the reputation of the place where the vehicle is found. No doubt this list is not

exhaustive. However, we have seen no case where the third of the five facts listed was held sufficient of itself to justify a search and seizure.

If this had been the vehicle of which the officers entertained suspicions earlier and it was driven by persons or associates of persons, who, to their knowledge, had imported liquor into Pennsylvania illegally, there would have been enough, and the fact that the vehicle was weighted down would have added to the reasonableness of the search. However, the naked fact that the vehicle was weighted down merely means that there was a large amount of material or some heavy material in the trunk, or perhaps that there was something wrong with the springs. Of itself it does not furnish reasonable ground for a search and seizure.

Nor can I accept the argument that the state should have a right to stop a traveler coming into the state and to search his belongings to ascertain whether he is bringing into the state any property upon which a state tax is due. This amounts to saying that the state has a right to establish custom houses, barriers or roadblocks at its border with other states. This takes us back to the Articles of Confederation or, worse, to the toll gates of the villages of mediaeval Europe.

Searches at state borders for diseased vegetation or searches of airplane passengers' baggage to ascertain whether bombs are being brought on the plane furnish no analogy for the situation before us. The Fourth Amendment to the United States Constitution protects persons against "unreasonable searches and seizures". The courts naturally cannot define with precision and in detail what constitutes a reasonable search. At best they can list factors such as was done in the *Patenotte* case, supra. And no doubt other factors might be important under varying circumstances. Certainly, among the things which must be taken into consideration in

determining whether a search is reasonable is the necessity for immediate investigation. *Brinegar v. United States,* 338 U. S. 160 (1949). It was a necessity for immediate stopping and searching of the car in *Carroll v. United States,* 267 U. S. 132 (1925), cited in the majority opinion, which justified searching the car in that case without a warrant. There the circumstances furnished adequate grounds for suspecting that the car was carrying contraband. When there is no such adequate ground for suspicion then something else must furnish the necessity for immediate investigation. Protection of life and health may furnish a necessity for a search which will be held reasonable under circumstances of relatively slight suspicion, where it would not be at all reasonable to search merely for the enforcement of the revenue laws of the state. As Mr. Justice JACKSON in his dissenting opinion in *Brinegar v. United States,* supra, at pp. 180, 183, said: "If we assume for example, that a child is kidnapped and the officers throw a roadblock about the neighborhood and search every outgoing car, it would be a drastic and undiscriminating use of the search. The officers might be unable to show probable cause for searching any particular car. However, I should candidly strive hard to sustain such an action, executed fairly and in good faith, because it might be reasonable to subject travelers to that indignity if it was the only way to save a threatened life and detect a vicious crime. But I should not strain to sustain such a roadblock and universal search to salvage a few bottles of bourbon and catch a bootlegger." To sustain what amounts to a customs barrier to enable the Commonwealth to confiscate some liquor or collect the revenue tax due upon it with no more ground of suspicion than exists here, is to my mind a clear violation of rights guaranteed by the Fourth and Fourteenth Amendments.

As Chief Justice TAFT said in the *Carroll* case, at pp. 153-4, supra: "It would be intolerable and unreasonable if a prohibition agent were authorized to stop every automobile on the chance of finding liquor and thus subject all persons lawfully using the highways to the inconvenience and indignity of such a search. Travellers may be so stopped in crossing an international boundary because of national self protection reasonably requiring one entering the country to identify himself as entitled to come in, and his belongings as effects which may be lawfully brought in. But those lawfully within the country, entitled to use the public highways, have a right to free passage without interruption or search unless there is known to a competent official authorized to search, probable cause for believing that their vehicles are carrying contraband or illegal merchandise."

The prohibition against the importation of liquor into the Commonwealth, except in accordance with the regulations of the board, contained in §491(8) of the Liquor Control Act of April 12, 1951, P. L. 90, art. IV, 47 PS §4-491(8) is aimed at the protection of the State's revenues from the sale of liquor within its borders. If, however, it can be said to have for its purpose the reduction or regulation of the consumption of liquor, the result is the same. The provision of our Liquor Control Act forbidding importation of liquor into the State is authorized by §2 of the Twenty-first Amendment to the Constitution of the United States. But while the Commonwealth may legislate against the importation of untaxed liquor into Pennsylvania under the Twenty-first Amendment, which to that extent modifies the congressional power to regulate interstate commerce under art. I, §8 of the United States Constitution, yet I see nothing in that amendment which modifies in liquor cases the prohibition in the Fourth and Fourteenth Amendments against unreasonable

searches or seizures. And under Chief Justice TAFT'S language in the *Carroll* case, supra, this search would not have been authorized even under the Eighteenth Amendment.

This case recalls the words of Mr. Justice MUSMANNO, relating to a similar invasion of a citizen's right of privacy—by wiretapping—in order to get evidence of another crime, carrying no threat to life and limb—gambling—in his dissenting opinion in *Commonwealth v. Chaitt*, 380 Pa. 532, at 549, 112 A. 2d 379, 388 (1955) : "I would rather see a petty gambler go free than that the great people of this Commonwealth should be deprived of the personal liberties forged in the fires of Lexington and Gettysburg and formulated amid the storm of debate in our legislative halls."

I would affirm the order of the court below suppressing this evidence.

WATKINS, J., joins in this dissent.