# ONE 1958 PLYMOUTH SEDAN *v.* PENNSYLVANIA.

No. 294.   Argued March 31, 1965.—Decided April 29, 1965.

*Stanford Shmukler* argued the cause for petitioner. With him on the brief was *Louis Lipschitz.*

*Thomas J. Shannon,* Assistant Attorney General of Pennsylvania, argued the cause for respondent. With him on the brief were *Walter E. Alessandroni,* Attorney General of Pennsylvania, and *Edward Friedman* and *Frank P. Lawley,* Deputy Attorneys General.

Mr. Justice Goldberg delivered the opinion of the Court.

At approximately 6:30 a. m. on December 16, 1960, two law enforcement officers of the Pennsylvania Liquor Control Board stationed near Camden, New Jersey, at the approach to the Benjamin Franklin Bridge, observed a 1958 Plymouth sedan bearing Pennsylvania license plates proceeding toward the bridge in the direction of Philadelphia, Pennsylvania. The officers, noting that "[t]he car was low in the rear, quite low," followed it across the bridge into Philadelphia. They stopped the automobile a short distance within the city, identified themselves and questioned the owner, George McGonigle. The officers then searched the car and, in the rear and the trunk, found 31 cases of liquor not bearing Pennsylvania tax seals. The car and liquor were seized and McGonigle was arrested and charged with violation of Pennsylvania law.[1] The officers did not have either a search or arrest warrant.

Pursuant to a Pennsylvania statute[2] the Commonwealth filed a petition for forfeiture of the automobile.[3] At the hearing McGonigle, by timely objection, sought dismissal of the forfeiture petition on the ground that the forfeiture of the automobile depended upon the admis-

---

[1] See note 9, *infra,* and accompanying text.

[2] Purdon's Pa. Stat. Ann., Tit. 47, § 6–601 (1964 Cum. Supp.), which provides in pertinent part:

"No property rights shall exist in any liquor, alcohol or malt or brewed beverage illegally manufactured or possessed, or in any still, equipment, material, utensil, vehicle, boat, vessel, animals or aircraft used in the illegal manufacture or illegal transportation of liquor, alcohol or malt or brewed beverages, and the same shall be deemed contraband and proceedings for its forfeiture to the Commonwealth may, at the discretion of the board, be instituted in the manner hereinafter provided."

[3] A separate petition was filed for the forfeiture of the liquor which was upheld by the trial court. No appeal was taken from this order.

sion of evidence illegally obtained in violation of the Fourth Amendment to the Constitution as applied to the States by the Fourteenth Amendment. The trial court sustained this position and dismissed the forfeiture petition. In doing so, the trial judge made a specific finding that "[t]he seizure was founded upon evidence illegally obtained, since under the particular circumstances the officers acted without probable cause." [4] The Superior Court of Pennsylvania, an intermediate appellate court, by a 4-to-3 decision reversed the order dismissing the petition and directed that the automobile be forfeited. 199 Pa. Super. 428, 186 A. 2d 52. The Supreme Court of Pennsylvania affirmed the order of the Superior Court, one judge dissenting. 414 Pa. 540, 201 A. 2d 427.

The basis of the Pennsylvania Supreme Court's decision was that the exclusionary rule, which this Court in *Mapp* v. *Ohio,* 367 U. S. 643, 657, held "is an essential part of both the Fourth and Fourteenth Amendments," applies only to criminal prosecutions and is not applicable in a forfeiture proceeding which the Pennsylvania court deemed civil in nature. In light of this disposition of the case, the State Supreme Court did not review the trial court's finding of lack of probable cause, stating:

> "The thrust of the arguments, both of the appellant and the Commonwealth, is directed to the validity and propriety of the search and the subsequent seizure by the officers of this Plymouth automobile. In our view, such arguments are beyond the point. By reason of the nature of the present proceeding, i. e., a forfeiture procedure, we consider it unnecessary to determine the propriety and validity of the search and the seizure of this automobile." 414 Pa., at 542; 201 A. 2d, at 429.

---

[4] The trial court's decision is unreported.

We granted certiorari, 379 U. S. 927, to consider the important question of whether the constitutional exclusionary rule enunciated in *Weeks* v. *United States,* 232 U. S. 383, and *Mapp* applies to forfeiture proceedings of the character involved here—a question on which there has been conflict in both state and federal decisions.[5] For the reasons set forth below, we hold that the constitutional exclusionary rule does apply to such forfeiture proceedings and consequently reverse the judgment of the Pennsylvania Supreme Court.

As this Court has acknowledged, "[t]he leading case on the subject of search and seizure is *Boyd* v. *United States,* 116 U. S. 616." *Carroll* v. *United States,* 267 U. S. 132, 147. See *Mapp* v. *Ohio, supra,* at 646–647. *Boyd* v. *United States,* 116 U. S. 616, itself was not a criminal case but was a proceeding by the United States to forfeit 35 cases of plate glass which had allegedly been imported without payment of the customs duty. The District Judge in the case entered an order compelling the owners of the plate glass to produce certain records which would aid the United States in proving its case for forfeiture. The question before the Court in *Boyd* was whether the compulsory production of a man's private papers for their evidentiary use against him in a proceeding to forfeit his property for alleged fraud against the revenue laws constituted an unreasonable search and seizure within the

[5] See *Commonwealth* v. *One 1958 Plymouth Sedan,* 414 Pa. 540, 201 A. 2d 427; *Berkowitz* v. *United States,* 340 F. 2d 168 (C. A. 1st Cir.) ; *United States* v. *$5,608.30 in United States Coin and Currency,* 326 F. 2d 359 (C. A. 7th Cir.) ; *United States* v. *$1,058.00 in United States Currency,* 323 F. 2d 211 (C. A. 3d Cir.) ; *United States* v. *Carey,* 272 F. 2d 492 (C. A. 5th Cir.) ; *United States* v. *One 1956 Ford Tudor Sedan,* 253 F. 2d 725 (C. A. 4th Cir.) ; *United States* v. *Physic,* 175 F. 2d 338 (C. A. 2d Cir.) ; *United States* v. *Butler,* 156 F. 2d 897 (C. A. 10th Cir.) ; *United States* v. *One 1963 Cadillac Hardtop,* 220 F. Supp. 841 (D. C. E. D. Wis.). See also *Cleary* v. *Bolger,* 371 U. S. 392, 401, 403 (concurring opinion).

meaning of the Fourth Amendment of the Constitution. In holding that the Fourth Amendment applied and barred such attempted seizure, Mr. Justice Bradley, for the Court stated:

"We are also clearly of opinion that proceedings instituted for the purpose of declaring the forfeiture of a man's property by reason of offences committed by him, though they may be civil in form, are in their nature criminal. In this very case, the ground of forfeiture as declared in the 12th section of the act of 1874, on which the information is based, consists of certain acts of fraud committed against the public revenue in relation to imported merchandise, which are made criminal by the statute; and it is declared, that the offender shall be fined not exceeding $5000 nor less than $50, or be imprisoned not exceeding two years, or both; and in addition to such fine such merchandise shall be forfeited. These are the penalties affixed to the criminal acts; the forfeiture sought by this suit being one of them. If an indictment had been presented against the claimants, upon conviction the forfeiture of the goods could have been included in the judgment. If the government prosecutor elects to waive an indictment, and to file a civil information against the claimants—that is, civil in form—can he by this device take from the proceeding its criminal aspect and deprive the claimants of their immunities as citizens, and extort from them a production of their private papers, or, as an alternative, a confession of guilt? This cannot be. The information, though technically a civil proceeding, is in substance and effect a criminal one. . . . As, therefore, suits for penalties and forfeitures incurred by the commission of offences against the law, are of this quasi-criminal nature, we think that they are within the reason of criminal proceedings for all

698

the purposes of the Fourth Amendment of the Constitution . . . ." *Boyd* v. *United States, supra,* at 633–634.

This authoritative statement and the holding by the Court in *Boyd* that the Government could not seize evidence in violation of the Fourth Amendment for use in a forfeiture proceeding would seem to be dispositive of this case. The Commonwealth, however, argues that *Boyd* is factually distinguishable as it involved a subpoena sought by the Government for the production of evidence whereas the issue here is the admissibility of illegally seized evidence already in the Government's possession. Although there is this factual difference between *Boyd* and the case at bar, nevertheless the basic holding of *Boyd* applies with equal, if not greater, force to the case before us. In both the *Boyd* situation and here the essential question is whether evidence—in *Boyd* the books and records, here the results of the search of the car—the obtaining of which violates the Fourth Amendment may be relied upon to sustain a forfeiture. *Boyd* holds that it may not.

The Commonwealth further argues that *Boyd's* unequivocal statement that the Fourth Amendment applies to forfeiture proceedings as well as criminal prosecutions has been undermined by the statements of this Court in *United States* v. *Jeffers,* 342 U. S. 48, 54, and *Trupiano* v. *United States,* 334 U. S. 699, 710. *Jeffers* and *Trupiano,* unlike *Boyd,* were not forfeiture cases. They were federal criminal prosecutions. In both cases the Court held that evidence seized in violation of the Fourth Amendment was not admissible notwithstanding the fact that the evidence involved was contraband. By way of dictum, however, since the point was not before it, the Court stated in these cases that its ruling that the contraband was excludable as illegally seized did not mean that the

Government was required to return the illegally imported narcotics to Jeffers or the unregistered still, alcohol and mash to Trupiano.

The nature of the contraband involved in these cases clearly explains these statements of the Court. Both *Trupiano* and *Jeffers* concerned objects the possession of which, without more, constitutes a crime.[6] The repossession of such *per se* contraband by Jeffers and Trupiano would have subjected them to criminal penalties. The return of the contraband would clearly have frustrated the express public policy against the possession of such objects. See *United States* v. *Jeffers, supra,* at 53–54.

It is apparent that the nature of the property here, though termed contraband by Pennsylvania, is quite different. There is nothing even remotely criminal in possessing an automobile. It is only the alleged use to which this particular automobile was put that subjects Mr. McGonigle to its possible loss. And it is conceded here that the Commonwealth could not establish an illegal use without using the evidence resulting from the search which is challenged as having been in violation of the Constitution. Furthermore, the return of the automobile to the owner would not subject him to any possible criminal penalties for possession or frustrate any public policy concerning automobiles, as automobiles. This distinction between what has been described as contraband *per se* and only derivative contraband has indeed been recognized by Pennsylvania itself in its requirement of mandatory forfeiture of illegal liquor, and stills, and only discretionary forfeiture of such things as automobiles illegally used. See Purdon's Pa. Stat. Ann., Tit. 47, § 6–602 (e) (1964

---

[6] See, as to *Trupiano,* Internal Revenue Code of 1939, §§ 2803 (a), 2810 (a), 53 Stat. 303, 308; as to *Jeffers,* Internal Revenue Code of 1939, § 2553 (a), 53 Stat. 271; Narcotic Drugs Import and Export Act, 42 Stat. 596, 21 U. S. C. § 174 (1958 ed.).

Cum. Supp.). We, therefore, do not have a case before us in any way analogous to the contraband involved in *Jeffers* and *Trupiano* and these cases can in no way be deemed to impair the continued validity of *Boyd* which, like this case, involved property not intrinsically illegal in character.[7]

Finally as Mr. Justice Bradley aptly pointed out in *Boyd*, a forfeiture proceeding is quasi-criminal in character. Its object, like a criminal proceeding, is to penalize for the commission of an offense against the law. In this case McGonigle, the driver and owner of the automobile, was arrested and charged with a criminal offense against the Pennsylvania liquor laws. The record does not disclose which particular offense or offenses he was charged with committing.[8] If convicted of any one of the possible offenses involved, however, he would be subject, if a

---

[7] Nor has the continued validity of *Boyd* been in any way impaired by the decisions of this Court in *United States* v. *One Ford Coupe Automobile,* 272 U. S. 321, or *Dodge* v. *United States,* 272 U. S. 530. The question involved in both of these cases was not the introduction of evidence seized in violation of the Constitution but that of whether evidence seized by one without statutory authority could be used when its seizure was later ratified by an official with statutory authority. Indeed in *Dodge* v. *United States, supra,* at 532, Mr. Justice Holmes, for the Court, expressly recognized that the case did not involve exclusion of evidence obtained by an unlawful search and seizure and stated:

"The exclusion of evidence obtained by an unlawful search and seizure stands on a different ground. If the search and seizure are unlawful as invading personal rights secured by the Constitution those rights would be infringed yet further if the evidence were allowed to be used."

[8] Under Pennsylvania law on the alleged facts of this case, McGonigle presumably could have been charged with violating one or more of the following subsections of Purdon's Pa. Stat. Ann., Tit. 47, § 4–491: (2) possession or transport of liquor that has not been purchased from a Pennsylvania Liquor Store; (4) possession of untaxed liquor; (11) illegal importation of liquor into the Commonwealth.

first offender, to a minimum penalty of a $100 fine and a maximum penalty of a $500 fine.[9]   In this forfeiture proceeding he was subject to the loss of his automobile, which at the time involved had an estimated value of approximately $1,000,[10] a higher amount than the maximum fine in the criminal proceeding.   It would be anomalous indeed, under these circumstances, to hold that in the criminal proceeding the illegally seized evidence is excludable, while in the forfeiture proceeding, requiring the determination that the criminal law has been violated, the same evidence would be admissible.[11]   That the forfeiture is clearly a penalty for the criminal offense and can result in even greater punishment than the criminal prosecution has in fact been recognized by the Pennsylvania courts.

[9] Purdon's Pa. Stat. Ann., Tit. 47, § 4–494 (a)  (1964 Cum. Supp.) provides:

"Any person who shall violate any of the provisions of this article, except as otherwise specifically provided, shall be guilty of a misdemeanor and, upon conviction thereof, shall be sentenced to pay a fine of not less than one hundred dollars ($100), nor more than five hundred dollars ($500), and on failure to pay such fine, to imprisonment for not less than one month, nor more than three months, and for any subsequent offense, shall be sentenced to pay a fine not less than three hundred dollars ($300), nor more than five hundred dollars ($500), and to undergo imprisonment for a period not less than three months, nor more than one year."

[10] See National Market Reports, Inc., Red Book, Jan. 1–Feb. 14, 1961, Region A, 114.

[11] This Court in *Boyd* v. *United States, supra,* at 638, rejected any argument that the technical character of a forfeiture as an *in rem* proceeding against the goods had any effect on the right of the owner of the goods to assert as a defense violations of his constitutional rights.   The Court stated:

"[A]lthough the owner of goods, sought to be forfeited by a proceeding *in rem,* is not the nominal party, he is, nevertheless, the substantial party to the suit; he certainly is so, after making claim and defence; and, in a case like the present, he is entitled to all the privileges which appertain to a person who is prosecuted for a forfeiture of his property by reason of committing a criminal offence."

In *Commonwealth* v. *One 1959 Chevrolet Impala Coupe*, involving a forfeiture in 1962, the Pennsylvania Superior Court in affirming the exercise of discretion to waive a forfeiture following a criminal prosecution, stated:

"It seemed to the court below that to make this man pay the sum of $500.00 in fines, together with the costs of the proceeding and the storage cost for the automobile, was sufficient punishment under all the circumstances. To forfeit a 1959 Chevrolet Impala coupe in addition to the above seemed to the court below to be entirely out of proportion to the crime involved. We cannot say that the court below abused its discretion in so acting." 201 Pa. Super. 145, 150, 191 A. 2d 717, 719.

In sum, we conclude that the nature of a forfeiture proceeding, so well described by Mr. Justice Bradley in *Boyd*, and the reasons which led the Court to hold that the exclusionary rule of *Weeks* v. *United States, supra,* is obligatory upon the States under the Fourteenth Amendment, so well articulated by MR. JUSTICE CLARK in *Mapp*, support the conclusion that the exclusionary rule is applicable to forfeiture proceedings such as the one involved here. This being the case, the judgment of the Pennsylvania Supreme Court must be reversed. Our holding frees the Pennsylvania court on remand to review the trial court's finding that the officials did not in this case have probable cause for the search involved, a question which it previously did not consider necessary to decide.[12]

---

[12] The applicable standard of what constitutes probable cause, as stated by MR. JUSTICE CLARK for the Court in *Ker* v. *California,* 374 U. S. 23, 33, "is the same under the Fourth and Fourteenth Amendments." Cf. *Beck* v. *Ohio,* 379 U. S. 89; *Aguilar* v. *Texas,* 378 U. S. 108; *Henry* v. *United States,* 361 U. S. 98; *Carroll* v. *United States,* 267 U. S. 132, 153–154.

The judgment of the Supreme Court of Pennsylvania is reversed and the cause is remanded for proceedings not inconsistent with this opinion.

*It is so ordered.*

MR. JUSTICE BLACK, concurring.

The language of the Fourth Amendment forbids "unreasonable searches and seizures" but it does not expressly or by implication provide that evidence secured in such a way cannot be used in a prosecution against an accused. Congress could, of course, pass a law to preclude the use of evidence so secured in the federal courts, but I do not believe this Court or any other has constitutional power to pass such a law itself. See *Wolf* v. *Colorado,* 338 U. S. 25, 39 (concurring opinion). For these reasons I cannot agree that because we ourselves might believe the practice of obtaining evidence in that manner "shocks the conscience" or is "shabby" or "arbitrary," we are commanded or even authorized by the Constitution to prevent its use as evidence. That seems to me to be amending the Constitution, which is the business of the people, not interpreting it, which is the business of the courts. But the Fifth Amendment does specifically provide that "No person . . . shall be compelled in any criminal case to be a witness against himself," and this Court held in *Boyd* v. *United States,* 116 U. S. 616, 634–635, that "a compulsory production of the private books and papers of the owner of goods sought to be forfeited in . . . a suit is compelling him to be a witness against himself, within the meaning of the Fifth Amendment to the Constitution, and is the equivalent of a search and seizure—and an unreasonable search and seizure—within the meaning of the Fourth Amendment." *Boyd* therefore stands for the constitutional principle that evidence secured by unreasonable search and seizure is compelled

evidence, and is therefore barred from use in criminal cases by the Fifth Amendment's provision that "No person . . . shall be compelled in any criminal case to be a witness against himself . . . ." See *Rochin* v. *California,* 342 U. S. 165, 174 (concurring opinion). The Court in *Boyd* thus based its exclusion of unlawfully seized evidence squarely on the specific prohibitions of the Fourth and Fifth Amendments, and not merely on the personal predilections of judges against such use.

This Court in *Mapp* v. *Ohio,* 367 U. S. 643, 646, recognized as the Court had in *Boyd* that "the Fourth and Fifth Amendments run almost into each other." 116 U. S., at 630. At the very outset of its opinion in *Mapp* this Court relied on and quoted at length from the opinion in the *Boyd* case, which had relied on the Fourth and Fifth Amendments together to forbid the use in court of evidence obtained through an unreasonable search or seizure. 367 U. S., at 646–647. Use of such evidence, the Court said in *Mapp,* would be "tantamount to coerced testimony." 367 U. S., at 656. And we said last Term in *Malloy* v. *Hogan,* 378 U. S. 1, 8:

> "*Mapp* held that the Fifth Amendment privilege against self-incrimination implemented the Fourth Amendment in such cases, and that the two guarantees of personal security conjoined in the Fourteenth Amendment to make the exclusionary rule obligatory on the States. We relied upon the great case of *Boyd* v. *United States,* 116 U. S. 616 . . . ."

It was because of the Court's reliance on the *Boyd* doctrine—which held that the Fourth and Fifth Amendments *together* barred use of unreasonably seized evidence—that I joined the Court's opinion in *Mapp.* See 367 U. S. 643, 661 (concurring opinion). And for that same reason I agree with the Court today that the Fourth Amendment's protection against unlawful search and seizure and

the Fifth Amendment's protection against compelled testimony apply in forfeiture proceedings like the one here. This was the holding in *Boyd,* which itself involved a forfeiture proceeding, and I would follow it in forfeiture proceedings as well as in criminal cases.  In doing so, I recognize that this interpretation was reached in *Boyd* on the principle that "constitutional provisions for the security of person and property should be liberally construed." 116 U. S., at 635.  But that interpretive principle, I think, is a desirable one if our Constitution is to be given its proper place in our Government.

I also agree with the Court that our remand expresses no view as to whether the trial court was correct in its ruling on the issue of probable cause, and that the Supreme Court of Pennsylvania is free on remand to review the trial court's finding, and that of course, as declared in *Mapp,* the standard of probable cause is the same in the state courts as in the federal courts.