THE PEOPLE OF PUERTO RICO, Plaintiff and Appellee, *v.* MIGUEL GONZÁLEZ CORTÉS, Defendant and Appellant.

No. R-62-191. Decided June 29, 1967.

*Eric Milán Muñiz* and *Edna Abruña Rodríguez* for appellant. *J. B. Fernández Badillo, Solicitor General, Rodolfo Cruz Contreras, Acting Solicitor General,* and *Juan A. Faría, Assistant Solicitor General,* for appellee.

MR. JUSTICE PÉREZ PIMENTEL delivered the opinion of the Court.

Pursuant to the provision of § 107 of the Code of Criminal Procedure (34 L.P.R.A. § 182) and the decision in the case of *General Motors Acceptance* v. *District Court*, 70 P.R.R. 898 (1950),[1] on February 3, 1960, the prosecuting attorney filed a proceeding in the Superior Court, Aguadilla Part, for the confiscation of a motor vehicle, substantially alleg-

---

[1] Act No. 39 of June 4, 1960, known as the "Uniform Vehicle, Mount, Vessel and Plane Seizure Act" (34 L.P.R.A. §§ 1721 and 1722), changed the proceeding mentioned in the case of *General Motors Acceptance, supra,* it being now incumbent upon the prejudiced party to challenge the confiscation by filing a timely complaint.

ing that "on October 23, 1959 Lieutenant Luis Ramos Noriega, of the police force of Aguadilla, caught defendant Miguel González Cortés carrying and transporting in a 1955-model Ford, license plate No. P-200-088, motor No. U5EX-129-760, six lists or tickets of three (3) digit figures which defendant Miguel González Cortés was carrying on his person and which can be used and were used for the illegal games of Bolita and Bolipool."

The complaint having been answered and a trial held on the merits, the trial court rendered judgment sustaining the complaint, after formulating the following:

"FINDINGS OF FACT

1. On October 23, 1959 Miguel González Cortés was driving the 1955-model Ford, license plate No. P-200-088, on State Highway No. 442 in the town of Aguadilla, transporting several students in his vehicle.

2. On said date and upon arriving at kilometer 0, hectometer 7, he was detained by Lieutenant Luis Ramos Noriega of the Police force of Aguadilla, because he was driving his vehicle at excessive speed in a school zone.

3. Upon being required to show his driving license, he opened his wallet, which he was carrying on his person and from inside the latter three bolipool lists dropped out and fell to the ground.

4. As a result of the seizure of said bolipool lists defendant was arrested and when he was searched three additional bolipool lists of five digits each were seized, which amounted to thirty bolipool fractions seized from defendant at that moment.

5. As a result of said facts defendant was accused of a violation of Act No. 220 of 1948 and upon being tried he was found guilty of said offense. As a result of the afore-stated facts the present confiscation proceeding is brought."

On the basis of the foregoing facts and as a question of law, the court concluded that since said defendant, in carrying "consciously on his person bolipool material and being conscious of the presence of said unlawful material on his person, and using his motor vehicle, although in actions for-

eign to the illegal game of bolita, he is using his motor vehicle to transport said unlawful material and therefore the seizure is proper."

On appeal defendant-appellant assigns the commission of the following errors:

"1—Defendant-appellant maintains that the evidence presented by plaintiff-appellee does not justify the judgment rendered because it does not conform to the legal provisions in force and the decisions of this Court.

"2—The lower court erred in deciding that the mere fact of consciously carrying on his person bolipool slips while driving a motor vehicle, although in actions foreign to the bolita game, is sufficient to justify the seizure of the vehicle."

The outcome of this case depends on the interpretation given to § 5 of Act No. 220 of 1948 (33 L.P.R.A. § 1251), but before proceeding to its interpretation we must summarize certain general principles of construction applicable to the laws which authorize forfeiture.

Through forfeiture the State deprives the owner of his property without compensation although, of course, by the due process of law of being notified and heard. Forfeitures are not favored by the courts and the statutes authorizing them are restrictively construed. It is so because forfeiture is of a punitive nature.[2] As a general rule the courts will give such a construction to statutes providing for forfeiture as will be consistent with justice and the dictates of natural reason. Said statutes must not be construed to forfeit an owner's property, unless from the statute itself, in the light of the legislative intent and existing conditions, it is concluded that the legislature so intended. We must not limit ourselves to the strict letter of the statute to uphold a forfeiture and we must not infer it from the doubtful language of the law. This does not mean, however, that we change the

---

[2] *Ochoteco* v. *Superior Court*, 88 P.R.R. 500 (1963); *One Plymouth Sedan* v. *Pennsylvania*, 380 U.S. 693.

clear language of a statute under the pretext of its interpretation. 37 C.J.S., *Forfeitures*, § 4(b), p. 8.

Said § 5 of Act No. 220 of 1948 (33 L.P.R.A. § 1251) provides:

"All devices, vehicles or other means of transportation, coins or other tools and implements employed and utilized in connection with the prohibited games of bolita, bolipool, clandestine combinations related to the pools or *bancas* of the racetracks of Puerto Rico and clandestine lotteries which may have been employed in connection with said games, shall be seized by the Secretary of Justice and forfeited to the Commonwealth of Puerto Rico, and shall, with the exception of vehicles, mounts, vessels or planes, be sold by order of the proper court, through the marshal thereof, at public auction to the highest bidder. The proceeds of such sale, together with any moneys seized, shall be paid over to the Secretary of the Treasury of Puerto Rico to be used by second- and third-class municipalities, distributed in proportion to the respective populations. Confiscated motor vehicles shall be placed under the custody of the Office of Transportation. Devices, implements, and tools which, in the judgment of the proper court, have no other use except in connection with the violation of sections 1247–1257 of this title, shall be destroyed.

"For the seizure and disposal of vehicles, mounts, vessels and planes, there shall be followed the same procedure established by the act known as 'Uniform Vehicle, Mount, Vessel and Plane Seizure Act', sections 1721 and 1722 of Title 34."

 We should remember that the judgment ordering the forfeiture of appellant's vehicle was based on the fact that the latter used it, although in actions foreign to the illegal game of bolita, to transport criminal material (bolipool tickets). However, pursuant to the letter of § 5 copied above, it is not the mere transportation of bolita material in itself what entails the forfeiture of the vehicle. What said section provides is that, among other things, the vehicles *used for, and utilized in connection* with the prohibited games of bolita, bolipool, etc., which may have been seized in con-

nection with said games, shall be forfeited. In order that the use of the vehicle fall within the prohibition of the statute there should exist something more than the mere incidental use in the transportation of the criminal material. The term "connection" signifies relation, the relationship between each other. That is, in order that the seizure may lie, the vehicle must be utilized to carry out any of the games prohibited by law, such as the printeries utilized in printing the prohibited game material, the money collected in said games, or other devices utilized[3] in connection with said games. For example, a vehicle is utilized in connection with said prohibited games when it is employed in the distribution of the prohibited material, slips, tickets, bolita lists, money, employed in said games, or when they are utilized by a seller of slips, tickets or numbers to go from one place to another for the purpose of carrying out his unlawful business. Hence, the transportation of the material used in the prohibited games may entail the seizure of the vehicle utilized for said transportation because in said cases there exists the connection or relation between the vehicle and the prohibited game, and it does not matter that the habitual use of the vehicle be a different one, where, actually, the vehicle is also used as a means to perform any of the inherent and necessary activities for the development and execution of the unlawful game.

When the legislature has meant to sanction, through forfeiture, the mere transportation of criminal things or objects, it has stated it clearly and expressly in the corresponding statutes. Thus, for example, the Spirits and Alcoholic Beverages Act (Act No. 6 of June 30, 1936, as amended) in its § 62 (13 L.P.R.A. § 1717), authorizes and orders the Secretary of the Treasury to seize "any vehicle . . . which loads, unloads, *transports*, carries or transfers

---

[3] See *Ben Ali* v. *Towe,* 103 A.2d 158; *Boling* v. *Division of Narcotics Control,* 181 N.E.2d 147.

. . . distilled spirits or alcoholic beverages . . . on which the taxes prescribed by this act have not been paid." (Italics ours.) Similar provisions may be found in other laws. The Excise Act of Puerto Rico (Act No. 2 of 1956) in its § 77 (13 L.P.R.A. § 4077) authorizes the Secretary of the Treasury to confiscate "any vehicle . . . which loads, unloads, *transports*, carries or transfers . . . merchandise on which the proper taxes have not been paid." The Narcotics Act (Act No. 48 of 1959) also authorizes the confiscation of "any vehicle . . . which is used . . . to facilitate any unlawful *transaction* related with the possession, control, sale, transportation, use or transfer of any narcotic drug." The Weapons Law (Act No. 17 of 1951) also authorizes the Secretary of Justice to seize any vehicle in which there is caught "any person in the act of *transporting* . . . any weapon in violation of this chapter." (Italics ours.)

On the other hand, in order that the seizure may lie under Act No. 220 of 1948, the vehicle must be used and utilized in connection with the prohibited games mentioned in said Act and it must have been seized in connection with said games. That is, the vehicle seized in connection with the prohibited games mentioned in the Act, is the one subject to forfeiture. The connection between the vehicle and the prohibited games is established when the vehicle is used to facilitate, help or perform the acts which propitiate the fact that the games are accomplished.

Appellant in this case was a public carrier engaged in the transportation of passengers in his own vehicle for pay. At the time, date, and place when some 30 bolipool fifths were seized divided into 6 fifths of three different numbers which he was carrying in his wallet, appellant was transporting students to the Aguadilla High School. The evidence only establishes that when the vehicle was detained for a violation of the Traffic Act and when his driving license was requested appellant pulled out his wallet from his pocket and when he

opened it some bolipool fifths dropped out. The automobile was searched and no other material used in the games prohibited by Act No. 220 was found. All the material seized consisted in the 30 fifths of bolipool which appellant was carrying in his wallet on his person.

■ It can hardly be sustained that appellant was using his vehicle at that time in connection with the unlawful games prohibited by the law, in the absence of additional evidence showing that the vehicle was also used to facilitate or help in any manner the operation of the game. The evidence for the People is rather compatible with the conclusion that appellant is a buyer of bolipool tickets to gamble and that he keeps the tickets in his wallet, and that, maybe, forgetting said fact, he opens his wallet in the presence of a policeman to show him his driving license.

Consequently, it must be decided that in view of the concurring circumstances in this case the forfeiture of appellant's vehicle did not lie.

The judgment will be reversed and another rendered instead dismissing the complaint.