$4,586.00 IN UNITED STATES CURRENCY (George Harris), One Allen Wales Adding Machine, Serial No. 9E 112346 (George Louis Harris and George D. Mantzourals), Appellants,

v.

DISTRICT OF COLUMBIA, Appellee.

No. 5109.

District of Columbia Court of Appeals.

Argued April 7, 1970.

Decided July 28, 1970.

---

Kenneth D. Wood, Washington, D. C., for appellants.

Leo N. Gorman, Asst. Corp. Counsel, for appellee. Charles T. Duncan, Corp. Counsel, Hubert B. Pair, Principal Asst. Corp. Counsel, Richard W. Barton and David P. Sutton, Asst. Corp. Counsel, on the brief.

Before KELLY, FICKLING and KERN, Associate Judges.

KELLY, Associate Judge:

This appeal is from a judgment of condemnation and forfeiture of certain property seized from appellants' possession as a result of the execution of a search warrant. We find merit with appellants' contention that the affidavit supporting the search warrant did not display the requisite probable cause and order the judgment reversed.

The affidavit opened with the statement that in July 1968, "information was developed by members of the * * * Metropolitan Police Department * * * that * * * a [named] known and convicted gambler is buying a scratch sheet at different newsstands daily * * * and going to a numbers office." The affidavit then described the results of police surveillance of the subject on seven of fourteen consecutive days. On July 11, 1968, at approximately 11:40 a. m., the subject was observed purchasing a so-called horse racing "scratch sheet" and then driving to the vicinity of the Northwest Washington address which was to become the subject of the search. The affidavit related that further surveillance of the subject disclosed that on July 15, 16, 17, 22, 23 and 24 he was observed parking his auto near the address in question, and entering the premises, at various times between 11:30 a. m. and 1:00 p. m., by the rear door. On five of the six days he was observed stopping either in front of the address or at a nearby street corner and looking around "as though to see if he was being followed." On the day that he did not stop and look around, he was seen carrying a small package into the premises. On another occasion he was observed entering the premises "with his right front pants pocket bulging." The affidavit related that on all six days he departed between the times of 6:10 p. m. and 6:50 p. m.; on all but one occasion he exited from the front door.

The affidavit concluded with the statement that:

Based on the information developed, the investigation conducted by the undersigned officers, the knowledge of the undersigned officers as to the operation of a lottery (commonly called the numbers

game), the methods employed by those engaged in this type of gambling activity to conduct their business so as to avoid detection, it is the firm belief that the person mentioned in this affidavit is presently engaged in the operation of a lottery, commonly called the numbers game. Further, that where bulging pockets and small packages are mentioned herein that they contain numbers bet slips and related records and paraphernalia used or to be used in the operation of this lottery. Also, that [the] premises * * * is being used to facilitate this gambling activity and that there is now concealed in these premises certain numbers bet slips and other gambling paraphernalia and records used or to be used in furtherance of this gambling activity * * *.

On July 25, 1968, the affidavit was sworn to before a United States Commissioner who then issued a warrant for the daytime search of the premises.[1] Although the July 30, 1968, execution of the warrant resulted in the seizure of the items described in the affidavit as well as the libelled property, it was only then that it was discovered that the person under surveillance was not the same person described in the affidavit as a known and convicted gambler.

Our finding that even if the person under surveillance was a twice-convicted gambler, the affidavit would still lack the necessary probable cause for a police search, makes it unnecessary for us to determine the effect of what the trial court described as "an honest mistake".[2]

■ Judging this affidavit by the same standards used to review an affidavit supporting a search warrant resulting in a criminal prosecution,[3] we conclude that the Supreme Court's decision in Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), requires a finding that the affidavit here was deficient.

■ The reasons for the subject of the affidavit being characterized as a "known gambler" must appear on the face of the affidavit. ";[T]he allegation that Spinelli was 'known' to the affiant and to other federal and local law enforcement officers as a gambler and an associate of gamblers is but a bald and unilluminating assertion of suspicion that is entitled to no weight in appraising the magistrate's decision [to issue a search warrant]". Spinelli, supra at 414, 89 S.Ct. at 588.

■ The defective Spinelli affidavit contained an element not even present here —an informant's tip that an unlawful gambling operation was being conducted within the premises to be searched. After finding that the informant's tip needed "some further support", the Court noted: "When we look to the other parts of the [affidavit], however, we find nothing alleged which would permit the suspicions engendered by the informant's report to ripen into a judgment that a crime was probably being committed." [4] While cognizant of a reviewing court's responsibility to "pay substantial deference" to a magistrate's determination of probable cause [5] and to "test" and "interpret" such affidavits

---

1. An arrest warrant also issued for the person named in the affidavit.

2. Photographs received into evidence at the libel proceeding indicated that the person under surveillance bore a remarkable resemblance to the person named in the affidavit. The mistake, however honest, was nevertheless a serious one.

3. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965).

4. 393 U.S. at 418, 89 S.Ct. at 590 (emphasis supplied).

5. Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964).

in a "commonsense and realistic fashion",[6] we cannot find under *Spinelli* standards a sufficient basis in this affidavit for a "judgment that a crime was probably being committed" within the premises searched.

Appellee has not pointed to anything unlawful about any one of the activities reported by the surveillance and, taken together, here, as in *Spinelli*, a " 'totality of circumstances' approach * * * paints with too broad a brush".[7] To find probable cause here would render any household, visited regularly by a furtive, twice-convicted gambler who was once observed purchasing a scratch sheet, subject to a police search. Such would not be permissible under the Fourth Amendment.

Reversed.

6. United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965).

7. 393 U.S. at 415, 89 S.Ct. at 588.