57 F.3d 1061
NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
 UNITED STATES of America, Plaintiff, Appellee,
v.
$200,226.00 IN UNITED STATES CURRENCY, Defendant. Gloria
Isabel Echeverry Berrio Bueno Monsalve, Claimant, Appellant.
 No. 94-2228
 United States Court of Appeals,
First Circuit.
 June 13, 1995
 
 Jose Vazquez, Assistant United States Attorney, with whom Guillermo Gil, United States Attorney, was on briefs for the United States.
 D.Puerto Rico
 VACATED AND REMANDED.
 Before SELYA, BOUDIN and LYNCH, Circuit Judges.
 PER CURIAM.
 
 
 1
 On September 9, 1993, after a one-night stay in San Juan, Puerto Rico, the claimant Gloria Echeverry passed through the security checkpoint at the Luis Munoz Marin International Airport on her way to board a flight to Miami, Florida. A private security guard viewed the first of Echeverry's two carry-on bags as it passed through the X-ray machine. The guard's suspicion was aroused by a mysterious shape in the first bag; the guard asked Echeverry whether the bag was hers, and Echeverry replied in the affirmative.
 
 
 2
 The guard opened the first carry-on bag and discovered large amounts of cash wrapped in four towels. The guard then summoned a Puerto Rico police officer, who in turn eventually called DEA agents to the scene. The second carry-on bag was also searched and found to contain cash wrapped in towels; together the bags contained $200,226.00. The cash was retained by the DEA, and Echeverry was allowed to leave with a receipt for the money.
 
 
 3
 Virtually everything else that occurred at the airport is disputed. Pertinently, the government claims that Echeverry consented to a search of both bags. The government also says that Echeverry voluntarily provided police with a remarkable story about the source of the money: according to the prosecutors, she stated that the $200,000 was a gift out of the blue from her wealthy Italian boyfriend, whose address, telephone number and occupation were unknown to her, and was delivered to her in a brown paper bag by a stranger.
 
 
 4
 On the other hand, Echeverry denies ever consenting to a search of her bags and says she was detained, isolated, interrogated, and that prior to her alleged detention she made no statement whatever about the origin of the cash. She says that she was told by the police of their general policy to detain persons carrying cash and that she was ordered to remain in a separate location until the DEA arrived to interrogate her.
 
 
 5
 On January 20, 1994, the United States filed a civil forfeiture complaint against the money in the district court, alleging that the cash was the proceeds of or was used in connection with drug trafficking. See 21 U.S.C. Sec. 881(a)(6). On February 25, 1994, Echeverry filed a claim to the seized cash. On March 8, 1994, she filed a motion to dismiss. She subsequently filed a motion, and supporting affidavit, to suppress much of the evidence on the ground that the law enforcement agents had obtained her statements and physical evidence in violation of the Fourth Amendment.
 
 
 6
 On July 12, 1994, the district judge issued an opinion and order denying the claimant's motions to dismiss and to suppress and directing Echeverry to show cause why summary judgment should not be entered for the government. In response to the court's sua sponte order, the government moved for entry of forfeiture judgment on July 14, 1994. Echeverry filed her response on August 4, 1994. The district court entered an order on September 23, 1994, again denying the claimant's dismissal and suppression motions, granting summary judgment for the United States and ordering forfeiture of the money. This appeal followed.
 
 
 7
 The chief issue in this appeal is the district court's resolution of contested factual disputes on summary judgment without an evidentiary hearing. In deciding that the search and resulting statements at the airport were legal, the district judge relied explicitly on the government's version of the facts. Pertinently, the opinion stated without qualification that Echeverry provided the boyfriend story voluntarily and that she "was never detained by the security personnel, local police officer [sic] or DEA agents" and "was free to leave at her will." Then, in ruling that there was probable cause to believe that the cash was linked to drug trafficking, the district judge relied on Echeverry's explanation of how she received the cash.
 
 
 8
 In concluding that Echeverry was never detained, the district court cited to the affidavits of three officers or agents. Acknowledging that Echeverry had filed an affidavit "contradicting" those of the government, the district court said that Echeverry's affidavit was "self-serving" and did "not create an issue of fact so as to defeat summary judgment." Her affidavit is certainly self-serving, as most litigation affidavits are, but it goes somewhat beyond mere conclusion and is undeniably at odds with the government's version. Her affidavit said in part:
 
 
 9
 [After the luggage was opened] Officer Carreras told me that I would be detained pending the arrival of the DEA. Officer Carreras stated that it was their policy to detain anyone who came through the airport carrying money. Upon being told that I would be detained, Officer Carreras picked up my two pieces of luggage and ordered me to follow him to a small room where I was held until the arrival of the DEA. Prior to being detained, I made no statement concerning the origin of the money in my possession.
 
 
 10
 A determination of whose version of events should be believed clearly cannot be made without an evidentiary hearing of some kind. Neither of the versions of what happened at the airport was inherently incredible; Echeverry's version was squarely supported by her sworn affidavit. Under these circumstances, we do not see how the district court could determine that the factual issues could be resolved in the government's favor without hearing from live witnesses and giving Echeverry the opportunity to testify in open court. See, e.g., United States v. Taylor, 13 F.3d 786 (4th Cir. 1994); United States v. Berkowitz, 927 F.2d 1376, 1385 (7th Cir. 1991), cert. denied, 113 S. Ct. 1059 (1993).
 
 
 11
 If Echeverry was in fact detained involuntarily by the police, held in isolation for a substantial period, given no Miranda warning, and then made statements that are potentially quite damaging, there are at least colorable issues raised as to whether the statements could be used in the forfeiture proceeding. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 696 (1965). Further, the use of Echeverry's unusual account of how she received the funds, and her professed ignorance of information about her alleged boyfriend, played an important role in the district court's determination that the property was subject to forfeit.
 
 
 12
 The judgment of the district court is vacated and the matter is remanded for further proceedings. Without seeking to prescribe the course of the proceedings on remand, we think that the district court might be well advised in due course to hold an evidentiary hearing to determine whose version of the airport events is correct before attempting to resolve either the suppression or the forfeiture issues.
 
 
 13
 It is so ordered.