NIEMEYER, Circuit Judge,
concurring in part and dissenting in part:
I concur in Parts I and II of the majority opinion and dissent from Parts III and IV. Part II upholds, against an equal protection attack, N.C. Gen.Stat. § 14-306.1, which bans video gaming machines put into use after a specified date. Subsequent sections of the North Carolina statute declare such machines a public nuisance and make their use or possession a crime. But in Part III, the majority concludes that a user or possessor of such contraband video machines is entitled to a hearing before the contraband can be destroyed. Because N.C. Gen.Stat. § 14-298 authorizes a law enforcement officer to destroy prohibited machines without a hearing, the majority finds that it denies owners due process. In reaching that conclusion, the majority assumes, erroneously I believe, that the banned machines are not per se contraband, but “derivative contraband which become unlawful because of their use.” Ante at 248. I respectfully disagree with the majority’s characterization of the North Carolina statute.
North Carolina makes illegal the operating or possessing for the purpose of operating any new video gaming machine that was not “grandfathered in” by registration and operation before certain stated dates. See N.C. GemStat. § 14-306.1(a). The same section also prohibits warehousing any such video gaming machines. Id. § 14-306.1(h) (formerly § 14-306.1(m)). Section 14-308 then declares the maintenance or keeping of any prohibited machine a “public nuisance,” and § 14-309 makes a violation of § 14-306.1, prohibiting the use and possession of video gaming machines, a crime. Any law enforcement officer, who is provided information on oath that a prohibited video gaming machine exists in the officer’s jurisdiction, is authorized to seize and destroy the machine. Id. § 14-298.
There can be no doubt that when the use and possession of gaming machines are *250 banned and made illegal, they are per se contraband. See One 1958 Plymouth Sedan v. Pennsylvania, 380 U.S. 693, 699, 85 S.Ct. 1246, 14 L.Ed.2d 170 (1965) (defining per se contraband as “objects the possession of which, without more, constitutes a crime”).[1] Because North Carolina has made the use, the possession for use, and the warehousing of prohibited video gaming machines illegal and therefore subject to destruction as contraband, I agree with the majority’s observation that in such circumstances “courts will not entertain a claim contesting the confiscation of contraband per se because one cannot have a property right in that which is not subject to legal possession.” Ante at 248 (quotation marks and citation omitted). Contraband does not enjoy the protections of the due process clause. Id.; see also Bennis v. Michigan, 516 U.S. 442, 447, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996) (upholding State’s forfeiture of innocent owner’s automobile used by a third person illegally on a theory that the “thing is here primarily considered as the offender or rather the offence is attached primarily to the thing” (quotation marks and citation omitted)); id. at 456, 116 S.Ct. 994 (Thomas, J., concurring) (“[Ujnder a different statutory regime, the State might have authorized the destruction of the car instead [of its forfeiture and sale]”).[2]
Because the use and possession of banned machines are illegal and their exis-fence is a public nuisance, I would not only uphold the constitutionality of § 14^-306.1 but also uphold the constitutionality of § 14-298, which authorizes the destruction of banned machines without a hearing. Accordingly, I would reverse entirely the judgment of the district court.

. The majority, appearing to overlook §§ 14-308 and 14-309, states that "[ujnder North Carolina law, video gaming machines are not inherently illegal [and][p]ossession of a video gaming machine alone does not constitute a crime.'' Ante at 248.

. To be sure, the owner of a lawful video gaming machine has a property interest to which attach the usual constitutional and statutory protections. Section 14-298, which authorizes the destruction of only contraband in which one can assert no cognizable property interest, does nothing to diminish the legal protections afforded to one’s property interest in a lawful machine. Should a law enforcement officer mistake lawful property for contraband and destroy it under § 14-298, the aggrieved property owner may pursue appropriate remedies for a State’s mistaken or unlawful taking and destruction of property. But concern for the hypothetical owner of lawful property who is subjected to a mistaken application of § 14-298 is not a basis for casting aside the State's choice to destroy contraband without observing procedures afforded to cognizable property.