SLOUGH, Appellant,

v.

LUCAS COUNTY SHERIFF, Appellee.

[Cite as *Slough v. Lucas Cty. Sheriff,* 174 Ohio App.3d 488, 2008-Ohio-243.]

Court of Appeals of Ohio,
Sixth District, Lucas County.

No. L–07–1155.

Decided Jan. 25, 2008.

**490**

Marilyn L. Widman and William D. Brady, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, and James C. Walter, Assistant Prosecuting Attorney, for appellee.

HANDWORK, Judge.

{¶ 1} This case is before the court as an accelerated appeal from the April 6, 2007 judgment of the Lucas County Court of Common Pleas that affirmed appellant's removal from employment with the Lucas County Sheriff, appellee. For the reasons that follow, we affirm the decision of the common pleas court.

{¶ 2} Appellant, Ronald Slough, was employed by appellee as a deputy sheriff. In July 2004, Slough was subject to an internal investigation unrelated to this appeal, initiated by appellee, concerning possible domestic problems. On or about July 15, 2004, appellee removed Slough's weapons and ordnance from his home for "safekeeping." On October 18, 2004, Slough filed a complaint in replevin seeking return of the weapons and ordnance. On November 22, 2004, appellee was ordered to return all but six items belonging to Slough. Included in the items retained by appellee pending further investigation was a MAK–90 Sporter, semi-automatic rifle, and an Intratec AB–10, 9 mm semi-automatic pistol. Magazines capable of being used with each weapon were also retained. There was a 50–round box magazine suitable for the Intratec AB–10 and a 75–round drum magazine suitable for the MAK–90 Sporter.

{¶ 3} On November 23, 2004, the weapons were test-fired, and appellant was indicted on two counts of unlawful possession of dangerous ordnance in violation of R.C. 2923.17(A) and (D), felonies of the fifth degree.[1] Slough filed a motion to suppress the weapons that were seized from his home by appellee without a

---

**1.** R.C. 2923.17(A) provides that "[n]o person shall knowingly acquire, have, carry, or use any dangerous ordnance." "Dangerous ordnance" is defined by R.C. 2923.11(K) as "[a]ny automatic or sawed-off firearm, zip-gun, or ballistic knife." "Automatic firearm" is defined as "any firearm designed or specially adapted to fire a succession of cartridges with a single function of the trigger," and includes "any semi-automatic firearm designed or specially adapted to fire more than thirty-one cartridges without reloading." R.C. 2923.11(E).

warrant. On June 8, 2005, Slough's motion was granted. The criminal charges filed against Slough were dismissed.

{¶ 4} Attendant to his November 2004 indictment, however, Slough was notified of his removal from his position as deputy sheriff, effective December 1, 2004, pursuant to R.C. 124.34,[2] for failure of good behavior and incompetency. The order that notified Slough of his removal stated:

{¶ 5} "Deputy Sheriff Ron Slough did have in his possession certain weapons and/or ordnance that was illegal for him to possess which resulted in felony indictments being filed against him. DS Slough's actions of being in possession of these weapons/ordnance and being indicted for such possession violate rules # 1—Law Violations[3] and # 7—Conduct Unbecoming an Employee[4] of the Lucas County Sheriff's Office Rules and Regulations."

{¶ 6} On December 8, 2004, Slough timely appealed his removal with the state of Ohio, State Personnel Board of Review. On September 20, 2005, Slough filed a motion in limine with the board, requesting that any reference to the weapons seized from Slough's home be excluded on the basis of res judicata or collateral estoppel. Slough's motion was denied. On February 23, 2006, the administrative law judge ("ALJ") issued a report and recommendation finding that "the two felony counts for possession of illegal weapons/ordnance should remain a component" of Slough's R.C. 124.34 removal; Slough's indictments concerning unlawful possession were "sufficient to merit the Sheriff's charging [Slough] with violations of Rule # 1, Law Violations and Rule # 7, Conduct Unbecoming" as a basis for his removal; the facts in the case supported a finding that Slough committed violations of department rules; and no disparate treatment evidence was presented that would mitigate against Slough's removal. The ALJ's recommendation to

2. R.C. 124.34(A) provides that "[n]o officer or employee shall be reduced in pay or position, fined, suspended, or removed, or have the officer's or employee's longevity reduced or eliminated, except * * * for incompetency, inefficiency, dishonesty, drunkenness, immoral conduct, insubordination, discourteous treatment of the public, neglect of duty, violation of any policy or work rule of the officer's or employee's appointing authority, violation of this chapter or the rules of the director of administrative services or the commission, any other failure of good behavior, any other acts of misfeasance, malfeasance, or nonfeasance in office, or conviction of a felony."

3. Lucas County Sheriff's Rule No. 1 provides that "[a]ll employees shall abide by all Federal and State laws, and all municipal ordinances," and that "[a]n arrest and/or conviction for the violation of any Federal, State law or municipal ordinance, will be construed as a violation of this Rule."

4. Lucas County Sheriff's Rule No. 7 provides: "All employees must conduct themselves in such a manner as never to reflect poorly on the good image of the Office of the Sheriff and/or its employees. Any action which strays from the professionalism and proper conduct expected of all employees will be considered a violation of this rule."

uphold Slough's removal from his position as deputy sheriff was adopted by the board.

{¶ 7} Slough timely appealed the board's decision, pursuant to R.C. 119.12, to the common pleas court. Slough argued to the common pleas court that (1) the board ruled contrary to law when it allowed the sheriff's office to present and rely on evidence of weapons that had been wrongfully seized from Slough's home and (2) the board's order affirming termination was not supported by reliable, probative, or substantial evidence. The common pleas court affirmed the board's decision to uphold Slough's removal.

{¶ 8} In particular, the common pleas court rejected Slough's argument that because the evidence in his criminal case had been suppressed, the board was precluded from considering any evidence concerning unlawfully seized weapons in his employment-termination hearing. The court noted that the constitutionality of the search was not being relitigated in Slough's employment-termination appeal and, thus, held that principles of collateral estoppel and res judicata were inapplicable. Rather, the court noted that the actual question before the court was whether the board erred by failing to utilize the exclusionary rule to preclude the use of illegally seized evidence in an administrative proceeding. The court held that the board did not err in considering evidence that had been suppressed in Slough's criminal case. The common pleas court found that (1) Slough's unlawful possession of dangerous ordnance is a direct reflection of his integrity, competency, and behavior as a deputy sheriff, (2) the weapons were seized out of "concern for the safety of the persons in the home after an informal interview with [Slough] and his wife over domestic issues," not in an effort to punish Slough or as a result of a criminal investigation, (3) any deterrence benefit was satisfied by suppression of the evidence in Slough's criminal case, and (4) to exclude such evidence from the board's consideration would "blind" the board and "deprive it of its duty to adjudicate proper enforcement of department standards, rules and regulations."

{¶ 9} The common pleas court additionally held that the board's decision was supported by reliable, probative, and substantial evidence and is in accordance with the law. Specifically, although an indictment alone does not indicate the existence of a reasonable probability that a law violation occurred, the common pleas court held that Slough did have in his possession certain weapons or ordnance that were illegal for him to possess because they were functioning and capable of firing more than 31 rounds in succession without reloading, in violation of R.C. 2923.17. The common pleas court held that this fact supported a finding that Slough conducted himself in a manner unbecoming an officer, a violation of Rule No. 7, because "the qualities essential for a successful job performance as a deputy sheriff are incompatible with the possession of illegal weapons and

ordnance." The court held that "[a] deputy sheriff who possesses [these weapons and/or ordnance] compromises his integrity, reflects poorly on the good image of the Department, and strays from the professionalism and proper conduct expected of the position of deputy sheriff." The court also held that Slough's dismissal was not contrary to R.C. 124.34, because Slough was not removed due to a felony conviction. Finally, the common pleas court agreed with the board that Slough failed to establish that he had received disparate treatment from other employees who had violated the law.

{¶ 10} On appeal to this court, Slough raises the following assignments of error:

{¶ 11} "Assignment of Error No. 1

{¶ 12} "The trial court ruled contrary to law in affirming the administrative law judge's determination that Appellant Ron Slough possessed 'illegal' or 'prohibited' weapons and was guilty by virtue of such possession of conduct unbecoming an officer.

{¶ 13} "Assignment of Error No. 2

{¶ 14} "The trial court's refusal to apply the exclusionary rule, which would have excluded from evidence in the administrative proceeding the ordnance which the employer, the Lucas County Sheriff's Office, seized in violation of Appellant's constitutional rights, is improper as a matter of law.

{¶ 15} "Assignment of Error No. 3

{¶ 16} "The trial court's finding that Ohio Administrative Code § 124:9-08 does not apply in Appellant's case is improper as a matter of law.

{¶ 17} "Assignment of Error No. 4

{¶ 18} "The trial court abused its discretion when it affirmed the administrative law judge's refusal to accept as relevant Appellant's evidence of disparate treatment."

{¶ 19} The authority of a common pleas court in the review of an order of an administrative agency is limited to a decision whether the order is "supported by reliable, probative, and substantial evidence and is in accordance with law." R.C. 119.12. The common pleas court's scope of review of an administrative order includes an appraisal of all evidence and a determination of the absence or presence of the requisite quantum of evidence. *Univ. of Cincinnati v. Conrad* (1980), 63 Ohio St.2d 108, 111, 17 O.O.3d 65, 407 N.E.2d 1265. The reviewing court, however, must give deference to the agency's interpretation of its own regulations. *Cuyahoga Cty. Bd. of Commrs. v. Ford* (1987), 35 Ohio App.3d 88, 92, 520 N.E.2d 1. When the evidence meets the standard or is uncontroverted, there is no statutory authority by which a trial court may

reverse, vacate, or modify the board's order. *Hale v. Ohio State Veterinary Med. Bd.* (1988), 47 Ohio App.3d 167, 169, 548 N.E.2d 247. Under R.C. Chapter 119, this court may reverse the common pleas court only upon a showing that the court abused its discretion by entering a judgment without a reasonable basis, that is, a judgment that is clearly wrong. *Sicking v. Ohio State Med. Bd.* (1991), 62 Ohio App.3d 387, 394, 575 N.E.2d 881.

{¶ 20} Slough argues in his first assignment of error that the common pleas court erred in finding that he possessed an unlawful weapon or ordnance because, although he had the weapons and magazines, the weapons were not capable of firing more than 31 rounds consecutively, without reloading, unless a magazine that could hold that many rounds was attached to the weapon. Because Slough stored the magazines separately from the weapons, he argues that while in his possession, the weapons were not unlawful and, therefore, there was no basis for his removal from employment.

{¶ 21} In support of his argument, Slough relies on *Sizemore v. Flannery* (June 23, 1982), 12th Dist. No. 60, 1982 WL 3165, and *State v. Rogers* (Sept. 13, 2001), 8th Dist. No. 78589, 2001 WL 1110294. *Sizemore* was a replevin action. The prosecutor had possession of Sizemore's U.S. caliber 30 M–1 carbine and would not return it because it was a dangerous ordnance in that it was designed to fire an unlawful number of cartridges without reloading, depending on the size of the ammunition clip used with the weapon. There was no indication that Sizemore had a clip, of any size, in his possession to be used with this weapon. The Twelfth District held that a "weapon is not an automatic weapon if it can be established from the evidence that the weapon does not have attached to it a clip capable of containing more than twenty-one cartridges," and ordered the return of the weapon. Using the rationale in *Sizemore*, the Eighth District in *Rogers* overturned a conviction of R.C. 2923.17, unlawful possession of dangerous ordnance, on the basis that the clip which would have allowed the 9 mm machine gun to fire more than 31 consecutive rounds without reloading was not attached to the 9 mm weapon at the time it was seized. The court held that "merely because a weapon can accommodate a variety of clip sizes that any one of which *may* exceed thirty-one rounds does not mean that the weapon becomes semi-automatic when the evidence supports that such a clip was not attached or never was attached while in the possession of the owner." *Rogers*. The court further stated that "[t]o criminalize the possession of a weapon that has the capability of being used in a lawful manner is illogical and therefore unreasonable." Id.

{¶ 22} We find that *Rogers* and *Sizemore* are not dispositive of Slough's issue on appeal. First, *Sizemore* is distinguishable from this case because there was no mention that Sizemore had possession of any clip, let alone one that when attached to the weapon would have made it a dangerous ordnance. In this case,

Slough had magazines that when attached to the weapons would cause the weapons to become dangerous ordnance. Secondly, *Rogers* concerns a criminal conviction. In this case, appellee did not have to establish beyond a reasonable doubt that Slough was guilty of possessing a dangerous ordnance in order to justify Slough's removal from employment.

{¶ 23} Rather, we hold that there was reliable, probative, and substantial evidence to support the board's finding that Slough's possessing weapons and magazines that when connected would render the weapons unlawful was sufficient to warrant Slough's removal on the basis that he engaged in conduct unbecoming a sheriff's deputy. Accordingly, we find Slough's first assignment of error not well taken.

{¶ 24} Slough argues in his second assignment of error that the trial court erred in refusing to apply the exclusionary rule to bar admission of evidence concerning the seized weapons. Specifically, Slough argues that "[a]bsent application of the exclusionary rule in administrative proceedings such as this, [appellee] would have unbridled ability to conduct illegal searches and seizures of its employees because the evidence obtained therein may not survive constitutional challenges in criminal court but would provide legitimate basis for disciplinary action up to and including the termination of employment." Slough argues that the ALJ used the incorrect balancing test to determine whether the exclusionary rule should apply and argues that as a deterrent for later seizures, appellee should be prohibited from using such evidence.

{¶ 25} Initially, we find that the board did not relitigate the issue of whether the weapons and ordnance were unlawfully seized without a warrant. Therefore, the principles of res judicata and collateral estoppel are inapplicable in this context. As the common pleas court correctly identified, the issue is whether the exclusionary rule would operate to bar the board from considering the existence of the weapons and ordnance. We find that the evidence need not be excluded from the board's consideration.

{¶ 26} In describing the exclusionary rule, the United States Supreme Court has stated the following:

{¶ 27} "When evidence is obtained in violation of the Fourth Amendment, the judicially developed exclusionary rule usually precludes its use in a criminal proceeding against the victim of the illegal search and seizure. *Weeks v. United States* (1914), 232 U.S. 383 [34 S.Ct. 341, 58 L.Ed. 652]; *Mapp v. Ohio* (1961), 367 U.S. 643 [81 S.Ct. 1684, 6 L.Ed.2d 1081]. The Court has stressed that the 'prime purpose' of the exclusionary rule 'is to deter future unlawful police conduct and thereby effectuate the guarantee of the Fourth Amendment against unreasonable searches and seizures.' *United States v. Calandra* (1974), 414 U.S.

338, 347 [94 S.Ct. 613, 619, 38 L.Ed.2d 561]. Application of the exclusionary rule 'is neither intended nor able to "cure the invasion of the defendant's rights which he has already suffered." ' *United States v. Leon* [ (1984), 468 U.S. 897], 906 [104 S.Ct. 3405, 3412, 82 L.Ed.2d 677], quoting *Stone v. Powell* (1976), 428 U.S. 465, 540 [96 S.Ct. 3037, 3074, 49 L.Ed.2d 1067], (WHITE, J., dissenting). Rather, the rule 'operates as "a judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." ' 468 U.S. at 906 [104 S.Ct. 3405, 82 L.Ed.2d 677], quoting *United States v. Calandra,* 414 U.S. at 348 [94 S.Ct. at 620, 38 L.Ed.2d 561].

{¶ 28} "As with any remedial device, application of the exclusionary rule properly has been restricted to those situations in which its remedial purpose is effectively advanced. Thus, in various circumstances, the Court has examined whether the rule's deterrent effect will be achieved, and has weighed the likelihood of such deterrence against the costs of withholding reliable information from the truth-seeking process." *Illinois v. Krull* (1987), 480 U.S. 340, 347, 107 S.Ct. 1160, 94 L.Ed.2d 364.

{¶ 29} In Ohio, the exclusionary rule generally has not been extended to civil cases. *State ex rel. Rear Door Bookstore v. Tenth Dist. Court of Appeals* (1992), 63 Ohio St.3d 354, 588 N.E.2d 116. Similarly, the federal government does not apply the exclusionary rule in certain civil cases, noting that there would be an insufficient deterrent effect to warrant imposing the rule. See, e.g., *United States v. Janis* (1976), 428 U.S. 433, 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046 (federal tax case); *Calandra* (grand-jury proceedings); and *United States ex rel. Sperling v. Fitzpatrick* (C.A.2 1970), 426 F.2d 1161 (parole revocation). There are, however, some instances in federal jurisdictions where the exclusionary rule has been used to bar evidence in civil proceedings that are deemed quasi-criminal. See, e.g., *One 1958 Plymouth Sedan v. Commonwealth of Pennsylvania* (1965), 380 U.S. 693, 85 S.Ct. 1246, 14 L.Ed.2d 170 (forfeiture case); and *State of Iowa v. Union Asphalt & Roadoils, Inc.* (1968), 281 F.Supp. 391 (anti-trust case).

{¶ 30} In order to apply the exclusionary rule, and prohibit the board from considering the weapons taken from Slough's home when making its determination, the potential deterrent effect of the exclusion must outweigh the " 'substantial social costs exacted by the exclusionary rule.' " *Krull,* 480 U.S. at 352–353, 107 S.Ct. 1160, 94 L.Ed.2d 364, citing *Leon* and *Janis* at 454, 96 S.Ct. 3021, 49 L.Ed.2d 1046. The United States Supreme Court has noted that "[t]he deterrent purpose of the exclusionary rule necessarily assumes that the police have engaged in willful, or at the very least negligent, conduct which has deprived the defendant of some right." *Michigan v. Tucker* (1974), 417 U.S. 433, 447, 94 S.Ct.

2357, 41 L.Ed.2d 182. Thus, "where the official action was pursued in complete good faith, * * * the deterrence rationale loses much of its force." Id.

{¶ 31} In this case, Slough voluntarily relinquished the key to his weapon cabinets prior to leaving his residence. Thereafter, it was determined that the weapons should be removed from the residence for safekeeping, not as part of any criminal investigation. No charges concerning domestic violence were ever pursued. Thus, the need for deterrence is not as apparent in this case as in others, because appellee was not attempting to use its authority to circumvent Slough's rights in order to gain incriminating evidence to use against him. Rather, the intention was merely to protect.

{¶ 32} Nevertheless, assuming arguendo that a desirable deterrent effect would occur by excluding the seized ordnance from the board's consideration, we agree with the common pleas court that any deterrent effect does not outweigh the societal costs imposed by the exclusion. Specifically, any additional deterrent effect on appellee, by precluding evidence of Slough's possession of unlawful ordnance, does not outweigh society's need to be governed by law enforcement officials who are not engaged in unlawful activity.

{¶ 33} Accordingly, we find that the common pleas court's decision was not contrary to law. Slough's second assignment of error is therefore not well taken.

{¶ 34} Slough argues in his third assignment of error that the common pleas court's determination that Ohio Adm.Code 124:9–08 applies only when an employee is convicted of a crime is unsupported by any authority or case law, and is not in accordance with law. We disagree.

{¶ 35} Ohio Adm.Code 124:9–08 merely states that "[c]onviction of any crime is not conclusive evidence that disciplinary action based upon the conviction is appropriate." Rather, one or more of the grounds set forth in R.C. 124.34 must be established as the basis for disciplinary action. Ohio Adm.Code 124:9–08 does not apply, because Slough was not convicted of any crime. Moreover, because Slough was found in violation of department policy or work rule, we find that Slough's termination was in accordance with R.C. 124.34. Slough's third assignment of error is therefore found not well taken.

{¶ 36} Slough argues in his fourth assignment of error that the common pleas court abused its discretion when it affirmed the ALJ's refusal to accept as relevant Slough's evidence of disparate treatment. We disagree.

{¶ 37} The board and the common pleas court considered the evidence Slough submitted concerning his allegation of having been treated disparately from other sheriff's deputies, but found that his evidence was insufficient to establish disparate treatment. Upon review, we find that the board's decision was supported by reliable, probative, and substantial evidence, is in accordance with

law, and that the common pleas court had a reasonable basis to affirm the board's decision. Slough's fourth assignment of error is therefore found not well taken.

{¶ 38} On consideration whereof, the court finds that substantial justice has been done the party complaining, and the judgment of the Lucas County Court of Common Pleas is affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Lucas County.

Judgment affirmed.

PIETRYKOWSKI, P.J., and SINGER, J., concur.