IN THE UNITED STATES DISTRICT COURT 
 FOR THE NORTHERN DISTRICT OF ALABAMA 
 SOUTHERN DIVISION 

BRUCE PETTWAY and EMPLOYER ) 
BENEFITS CONSULTING, LLC, ) 
 ) 
Plaintiffs, ) 
 ) 
v. ) Case No. 5:19-CV-1073-KOB 
 ) 
ATTORNEY GENERAL STEVE ) 
MARSHALL and OTIS PERKINS, ) 
 ) 
Defendants. ) 

 MEMORANDUM OPINION 

Plaintiffs in this case allege that the Defendant violated the Fourth and Eighth 
Amendments by seizing funds that Plaintiffs earned while serving as a consultant for a pair of 
bingo operators in Jefferson County, Alabama. Pursuant to Federal Rule of Civil Procedure 12, 
the Defendant’s instant motion to dismiss calls the numbers b(1) and b(6) to the court’s attention, 
arguing that this court lacks subject-matter jurisdiction and that the complaint fails to state a 
claim upon which relief can be granted. (Doc. 52.) Ultimately, though, because qualified 
immunity shields the Defendant from suit, the court WILL GRANT the motion to dismiss. 
Background 
The Third Amended Complaint alleges that Plaintiff Bruce Pettway, a business consultant 
and broker, provided consulting services to Brighton Ventures and Brighton Ventures II 
(collectively, “Brighton Ventures”) in early 2019 in exchange for a one-time payment of 
approximately $15,500. (Doc. 51 at 3–4). Mr. Pettway then deposited these funds into Plaintiff 
Employer Benefits Consulting’s account at a BBVA Bank branch in Jefferson County, Alabama. 
The City of Brighton, also located in Jefferson County, issued a license to Brighton Ventures to 
conduct bingo games. (Id. at 4.) Although EBC is located in Jefferson County and Mr. Pettway’s 
services allegedly took place in Jefferson County, Brighton Ventures is incorporated in Madison 
County, Alabama. 
On June 7, 2019, former Defendant Otis Perkins, a special agent with the Alabama 

Attorney General’s Office, executed an affidavit in Madison County for seizure of several bank 
accounts suspected of holding funds derived from illegal gambling activity. Specifically, the 
affidavit stated that Brighton Ventures operated an illegal electronic bingo facility in Jefferson 
County, and that proceeds from the facility existed in six different accounts—including 
Plaintiffs’ BBVA account. (Doc. 53-2.) The affidavit pointed to Brighton Ventures’ $15,500 
check to Plaintiffs—issued as “revenue share”—as evidence of illegal profit. (Id. at 6.) Based on 
Agent Perkins’s affidavit, the Circuit Court of Madison County, Alabama issued a warrant, 
which was executed on June 7, 2019 on Plaintiffs’ BBVA account. On June 13, 2019, BBVA 
Bank notified Plaintiffs that the State of Alabama had seized and frozen the account; at the time, 
the account held about $240,000. 

On July 3, 2019, the State of Alabama filed an in rem civil forfeiture action in Madison 
County for the allegedly illegal gambling proceeds in Plaintiffs’ BBVA account. (Doc. 54 at 10.) 
Plaintiffs did not receive notice of the seizure warrant from the State until after Plaintiffs filed 
the instant suit on July 10, 2019. (Doc. 51 at 6.) 
Based on these facts, Plaintiffs’ Third Amended Complaint brings two1 causes of action. 
First, Plaintiffs allege that by seizing $240,000 from Plaintiffs, Defendant Attorney General 

1 The Third Amended Complaint originally included a third cause of action, “unlawful seizure of 
property.” But during the pendency of the instant motion to dismiss, Plaintiffs voluntarily 
withdrew this claim, along with all claims against Otis Perkins, on November 19, 2019. (Doc. 
59.) 
Steve Marshall violated the Eighth Amendment’s prohibition of excessive fines. Because the 
supporting affidavit only expressly cited to Brighton Ventures’ $15,500 check, the State’s 
seizure of the whole account “was grossly disproportionate to the fine [a maximum of $6,000] 
which may be imposed for violating the state’s gambling law.” (Doc. 51 at 9.) 

Second, Plaintiffs assert that Attorney General Marshall violated the Fourth 
Amendment’s ban on unreasonable seizures. Similar to Plaintiffs’ Eighth Amendment count, 
Plaintiffs contend that the account freeze was an unreasonable seizure because “the amount 
seized was totally out of proportion to the maximum criminal fine ($6,000) for violation of the 
State’s gambling laws.” (Doc. 51 at 12.) 
Based on these alleged constitutional violations, Plaintiffs seek a declaratory judgment 
that Attorney General Marshall violated Plaintiffs’ Fourth and Eighth Amendment rights, a 
permanent injunction “barring Defendants from engaging in similar conduct against Plaintiffs in 
the future” (Doc. 51 at 13), compensatory and punitive damages, and attorneys’ fees and costs. 
Underlying Plaintiffs’ two remaining causes of action, Plaintiffs also allege several facts 

to suggest that Attorney General Marshall had impure motivations in targeting Mr. Pettway. Mr. 
Pettway, a black man, is the brother of Jefferson County Sheriff Mark Pettway. (Doc. 51 at 6.) 
Since Sheriff Pettway’s investiture in January 2019, Plaintiffs allege that Attorney General 
Marshall has publicly criticized the new sheriff’s apparent apathy about enforcing Alabama’s 
gambling laws. For example, Plaintiffs allege that in April 2019, Attorney General Marshall told 
a group of students at Auburn University that he would “handle the Sheriff” in response to 
Sheriff Pettway’s supposed failure to enforce Alabama’s gambling laws in Jefferson County. 
(Doc. 51 at 7.) But at the same time, Attorney General “Marshall has allowed an electronic bingo 
operation to operate in the majority white Houston County, Alabama.” (Id. at 7.) 
Mr. Pettway and EBC filed their first complaint in this court on July 10, 2019, along with 
a motion to enjoin the State from freezing Plaintiffs’ BBVA bank account. (Docs. 1 & 2). 
Plaintiffs amended their complaint three times, on July 19, July 23, and September 25, 2019, by 
adding Agent Perkins as a Defendant and allegations that Defendants acted in bad faith in 

violating Plaintiffs’ constitutional rights. (Docs. 11, 15, 51). 
Attorney General Marshall moved to dismiss the entire case on Younger abstention 
grounds on July 24, 2019; he argued that the court should abstain from exercising jurisdiction 
over this case because Plaintiffs ask the federal court to intervene in the ongoing state forfeiture 
proceeding in Madison County. (Doc. 17). The court denied the motion because Plaintiffs 
presented facially plausible evidence that Defendants acted in bad faith—an allegation that, if 
true, precludes the Younger doctrine. See Wilson v. Thompson, 593 F.2d 1375, 1387 (5th Cir. 
1979.) Specifically, the court found that “forfeiture of $240,000 for alleged ‘gambling proceeds’ 
far below that amount . . . strikes the court as facially suspect.” (Doc. 30 at 8.) 
After the court denied Attorney General Marshall’s motion—and, apparently, after the 

State investigated the BBVA account for other illegally obtained proceeds—the State unfroze all 
but $15,500 in Plaintiffs’ account. Plaintiffs filed their Third Amended Complaint soon 
thereafter (Doc. 51), and the court found Plaintiffs’ motion to unfreeze the funds to be moot. 
(Doc. 56.) The civil forfeiture proceeding remains pending before the Madison County Circuit 
Court regarding the $15,500 that Brighton Ventures paid Plaintiffs. 
Defendants filed the instant motion to dismiss on October 8, 2019 (Doc. 54), to which 
Plaintiffs responded (Doc. 57), and Defendants replied. (Doc. 58.) Pursuant to Defendants’ 
motion, which raised Eleventh Amendment immunity as a defense, Plaintiffs conceded that the 
Eleventh Amendment prevents claims against Defendants in their official capacities. On 
November 14, 2019, Plaintiffs filed a voluntary motion to dismiss all claims against Defendants 
in their official capacities. (Doc. 59.) Because Plaintiffs only sued Agent Perkins in his official 
capacity (Doc. 51 at 3), no claims remain against Agent Perkins. The court dismissed Agent 
Perkins from the case on May 28, 2020. (Doc. 60.) 

After the dust settled, Plaintiffs’ remaining two Counts contend that Attorney General 
Steve Marshall, pursuant to 42 U.S.C § 1983 and in his individual capacity only, violated 
Plaintiffs’ Eighth Amendment rights (Count I) and Fourth Amendment rights (Count II) by 
freezing their BBVA account.2 Attorney General Marshall’s motion to dismiss does not attack 
the facial plausibility or sufficiency of Plaintiffs’ Third Amended Complaint; instead, he raises 
two affirmative defenses—prosecutorial immunity and qualified immunity—and argues once 
again that the Younger abstention doctrine applies. Because, as explained below, Attorney 
General Marshall is entitled to qualified immunity regarding both of Plaintiffs’ claims, the court 
need not address the prosecutorial immunity and will not revisit the Younger abstention 
arguments. 

Qualified Immunity Analysis 
Qualified immunity protects government officials performing discretionary functions 
from individual capacity suits unless the official violates a “clearly established” statutory or 
constitutional right “of which a reasonable person would have known.” Hope v. Pelzer, 536 U.S. 
730, 739 (2002). The purpose of qualified immunity is to allow government officials to do their 

2 Although Plaintiffs no longer allege any causes of action under state law, Plaintiffs comment as 
an aside that Attorney General Marshall violated Ala. R. Civ. P. 64(b)(2)(B) because the warrant 
failed to notify Plaintiffs “of their right to a pre-judgment hearing on the issue of dissolution.” 
(Doc. 51 at 5–6.) To the extent that Plaintiffs assert this argument, the court finds it inapplicable 
because Plaintiffs have neither explained why the Alabama Rules of Civil Procedure should 
apply to the State of Alabama’s execution of a seizure warrant nor expressly pled such a cause of 
action. 
jobs without specter of personal liability haunting their every move. “When improper motive is 
part of the underlying constitutional tort—and where evidence exists of mixed motives—a 
defendant is still entitled to qualified immunity if the record indisputably establishes that the 
defendant in fact was motivated, at least in part, by lawful considerations.” Mitchell v. City of 

Jacksonville, 734 F. App’x 649, 651 (11th Cir. 2018) (emphasis added; quoting Stanley v. City of 
Dalton, 219 F.3d 1280, 1296 (11th Cir. 2000)). 
Whether a government official is entitled to qualified immunity is a question of law that 
the court should determine “at the earliest possible stage of a litigation.” Anderson v. Creighton, 
483 U.S. 635, 646 n.6 (1987). To receive qualified immunity, the government official bears the 
initial burden to prove that he was acting within the scope of his discretionary authority. Vinyard 
v. Wilson, 311 F.3d 1340, 1346 (11th Cir. 2002). 
If the official can establish that he was acting within his discretionary authority, the 
plaintiff then shoulders the burden of showing that qualified immunity is not appropriate. Lee v. 
Ferraro, 284 F.3d 1188, 1194 (11th Cir. 2002). A two-prong test, performed in either order, 

determines whether qualified immunity is appropriate. Saucier v. Katz, 533 U.S. 194, 201 
(2001); Pearson v. Callahan, 555 U.S. 223, 236 (2009). One prong requires the court to ask 
whether, “[t]aken in the light most favorable to the party asserting the injury . . . the facts alleged 
show the officer’s conduct violated a constitutional right.” Gonzalez v. Reno, 325 F.3d 1228, 
1234 (11th Cir. 2003) (citing Saucier, 533 U.S. at 201). The other prong asks whether the right 
was clearly established at the time of the alleged violation. Gonzalez, 325 F.3d at 1234. A right is 
clearly established when “the law at the time of an incident [provides] ‘fair warning’ to the 
defendants that their alleged conduct was unconstitutional.” Salvato v. Miley, 790 F.3d 1286, 
1292 (11th Cir. 2015). Put simply, a plaintiff’s claim can survive a motion to dismiss raising 
qualified immunity if “the plaintiff’s allegations state a claim of violation of clearly established 
law.” Mitchell v. Forsyth, 472 U.S. 511, 526 (1985). 
In this case, Plaintiffs clearly assert that Attorney General Marshall operated within his 
discretionary role at all relevant times. See (Doc. 51 at 6) (“It was the function of Defendant 

General Marshall in his administrative role to ensure that the Search and Seizure Warrant 
complied with Alabama’s rules for in rem proceedings.”) See also (Doc. 57 at 8) (conceding that 
Defendants acted within the scope of their discretionary authority.) The burden then shifts to 
Plaintiffs to show that Attorney General Marshall violated a clearly established constitutional 
right. See Lee, 284 F.3d at 1194. Plaintiffs contend that Attorney General Marshall violated two 
Constitutional rights: freedom from excessive fines under the Eighth Amendment (Count I) and 
freedom from unreasonable searches and seizures under the Fourth Amendment (Count II). 
Plaintiffs’ claims fail on both Counts. 
Plaintiffs’ Count I fails because Plaintiffs incorrectly assume that the freeze of the BBVA 
account constituted a “fine” under the Eighth Amendment. The Supreme Court directly 

addressed this issue in United States v. Bajakajian, 524 U.S. 321, 328 (1998) and determined that 
forfeitures are fines only “if they constitute punishment for an offense.” Id. The Court explained 
that in rem actions are not punitive because they proceed against guilty property rather than 
guilty persons; accordingly, in rem forfeitures, even if permanent, are not “fines” within the 
meaning of the Eighth Amendment. Id. at 330–32. See also Browning-Ferris Indus. v. Kelco 
Disposal, 492 U.S. 257, 265 (1989) (explaining that a “fine” is “a payment to a sovereign as 
punishment for some offense.”) 
The instant case features neither a payment nor a punishment. The State of Alabama 
initiated an in rem proceeding and temporarily froze Plaintiffs’ BBVA bank account while 
investigating payments—allegedly derived from illegal gambling activity—that Brighton 
Ventures made to Plaintiffs. Because the State of Alabama’s investigatory and temporary freeze 
of Plaintiffs’ bank account falls outside the purview of the Eighth Amendment’s prohibition on 
excessive fines, Plaintiffs have failed to show that Attorney General Marshall violated a clearly 

established constitutional right under Count I. The court WILL DISMISS Plaintiffs’ Count I on 
qualified immunity grounds. 
Plaintiffs’ Count II also fails because Plaintiffs fail to show how Attorney General 
Marshall’s conduct violated Plaintiffs’ Fourth Amendment rights. See Gonzalez v. Reno, 325 
F.3d at 1234. The Fourth Amendment establishes that “[t]he right of the people to be secure in 
their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not 
be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or 
affirmation, and particularly describing the place to be searched, and the persons or things to be 
seized.” U.S. Const. amend. IV. 
Plaintiffs allege that the State’s freeze of Plaintiffs’ BBVA account was unreasonable 

under the Fourth Amendment because the freeze (a) physically occurred at a BBVA branch 
location in Madison County that Plaintiffs never used, and (b) was excessive. But Plaintiffs cite 
to no authority to suggest how either of these facts relates to the pivotal Fourth Amendment 
question of whether the State had probable cause to issue a warrant and freeze the BBVA 
account. Because “[t]he reasonableness of a seizure or arrest under the Fourth Amendment turns 
on the presence or absence of probable cause,” Case v. Eslinger, 555 F.3d 1317, 1326 (11th Cir. 
2009) (citation omitted), the presence of probable cause precludes a Fourth Amendment claim. 
But Plaintiffs do not contest the issue of probable cause; instead, they first argue that 
“[i]n every other county in which the Attorney General has seized property in a gambling 
forfeiture action, the property seized was located in the county where the seizure took place.” 
(Doc. 51 at 8.) This contention is mere tautology. As a general proposition, a seizure of property 
necessarily occurs where the property exists, else the seizor would have nothing to seize. But 
even beyond this argument’s facial invalidity, Plaintiffs fail to explain how the State’s seizure of 

Plaintiffs’ account from BBVA’s Madison County branch demonstrates a lack of probable cause. 
Plaintiffs’ other argument, that the “seizure of an amount higher than the maximum 
criminal fine is unconstitutionally unreasonable,” also lacks merit. (Doc. 51 at 11). Plaintiffs 
attempt to bolster their argument by citing extensively to One 1958 Plymouth Sedan v. 
Pennsylvania, 380 U.S. 693, 699 (1965). But the Supreme Court in One 1958 Plymouth only 
held that the Fourth Amendment’s exclusionary rule of evidence applies equally to both criminal 
and forfeiture proceedings, not that a government entity cannot seize property worth more than a 
fine associated with a defendant’s underlying criminal conduct. Id. at 696. 
In One 1958 Plymouth, the Commonwealth of Pennsylvania arrested a man for 
smuggling 31 cases of untaxed liquor across state lines; then, as provided by Commonwealth 

law, the government permanently seized both the cases and the car that conveyed them. 
Although the trial court held that the arresting officers lacked probable cause to search the car in 
the first place, the Pennsylvania Supreme Court on appeal held that the officers did not need 
probable cause to seize the vehicle. Id. at 695. Although the United States Supreme Court noted 
as an aside that the vehicle was worth more than the maximum penalty associated with the 
smuggling offense, the Court’s point was to highlight the need for probable cause whenever a 
government entity seizes anything of value. Id. at 701. The Court concluded that, on remand, the 
Pennsylvania court should determine whether the Commonwealth had probable cause to search 
the vehicle. Id. at 702. 
Here, by contrast, Plaintiffs have not even argued that the State lacked probable cause to 
seize the BBVA account. Nor could Plaintiffs reasonably argue that the State lacked probable 
cause. Officer Perkins’s affidavit supporting the seizure warrant reveals a thorough, step-by-step 
description of how $15,500 of “revenue share” from an illegal gambling facility operated by 

Brighton Ventures in Jefferson County wound up in Plaintiffs’ BBVA bank account. (Doc. 53-2 
at 3–7.) The court makes no determination about whether the $15,500 that Brighton Ventures 
paid to Plaintiffs constitutes the fruit of illegal gambling activity—an issue currently pending 
before the Circuit Court of Madison County. But the court does find that the State had probable 
cause to seize Plaintiffs’ BBVA account. For this reason, Plaintiffs’ Fourth Amendment claim 
fails as a matter of law, and the court WILL DISMISS Plaintiffs’ Count II. 
Conclusion 
Because Attorney General Marshall is entitled to qualified immunity regarding both the 
Eighth Amendment and Fourth Amendment claims against him, the court WILL GRANT his 
motion to dismiss (Doc. 52) and DISMISS the case with prejudice. The court will enter a 

separate order accompanying this memorandum opinion. 
DONE and ORDERED this 28th day of May, 2020. 

 ____________________________________ 
 KARON OWEN BOWDRE 
 UNITED STATES DISTRICT JUDGE